ACCEPTED
04-15-00228-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
4/14/2015 3:19:56 PM
KEITH HOTTLE
CLERK

## ORAL ARGUMENT REQUESTED

No. ___04-15-00228-CV___

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
4/14/2015 3:19:56 PM
KEITH E. HOTTLE
Clerk

IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS AT SAN ANTONIO, TEXAS
_____

STEWART TITLE GUARANTY COMPANY, Defendant-Appellant

v.

VANTAGE BANK TEXAS, SUCCESSOR BY MERGER TO D'HANIS STATE
BANK, and BANPROP, L.L.C., Plaintiffs-Appellees
_____

On Appeal from the 150th Judicial District Court of Bexar County, Texas
Cause No. 2013-CI-14899
(Honorable Laura Salinas)
_____

**APPELLANT'S PETITION FOR PERMISSION TO APPEAL AMENDED
ORDER GRANTING PLAINTIFFS' SECOND MOTION FOR PARTIAL
SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION
FOR PERMISSION TO APPEAL AND TO STAY PROCEEDINGS
PENDING APPEAL**
_____

I. Clay Rogers
State Bar No. 17172150
crogers@morganlewis.com
Ankita Puri
State Bar No. 24074920
ankita.puri@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
T: (713) 890-5000
F: (713) 890-5001
*Counsel for Defendant-Appellant
Stewart Title Guaranty Company*

## IDENTITY OF PARTIES AND COUNSEL

Stewart Title Guaranty Company       Defendant-Appellant

Vantage Bank, Successor by Merger      Plaintiffs-Appellees
to D'Hanis State Bank, and Banprop, L.L.C.

## Appellate and Trial Counsel for Appellant

I. Clay Rogers         Appellate Counsel for Appellant
Ankita Puri
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, Texas 77002

Scott R. Breitenwischer       Trial Counsel for Appellant
Andrew Nash
ROYSTON, RAYZOR,
VICKERY & WILLIAMS, LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002

## Appellate and Trial Counsel for Appellees

David B. West       Appellate and Trial Counsel for Appellees
David Vanderhider
COX SMITH MATTHEWS, INC.
112 E. Pecan Street, Suite 1800
San Antonio, Texas 78205

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ............................................................ ii

TABLE OF AUTHORITIES ....................................................................................v

STATEMENT OF THE CASE................................................................................ viii

COMPLIANCE WITH TEXAS RULES OF APPELLATE PROCEDURE 28.3(e)(1), 25.1(d) .........................................................................................................x

STATEMENT OF THE JURISDICTION.............................................................. xi

ISSUE PRESENTED .............................................................................................. xi

STATEMENT OF FACTS ........................................................................................1

STANDARD OF REVIEW .......................................................................................4

SUMMARY OF THE ARGUMENT .........................................................................4

ARGUMENT AND AUTHORITIES.........................................................................5

    I.      THE COURT SHOULD ACCEPT THE APPEAL UNDER SECTION 51.014 OF THE TEXAS CIVIL PRACTICE AND REMEDIES CODE .....................................................................................5

          A.    This appeal meets the standards for permissive interlocutory appeals under section 51.014(d). ................................................6

          B.    The Amended Order appealed involves a controlling question of law to which there is substantial ground for difference of opinion and immediate appeal will materially advance the ultimate termination of the litigation. ........................................7

    II.     COVERAGE IS PREDICATED ON THE POLICY, STATE STATUTES AND COMMON LAW.................................................. 8

          A.    The Policy requires the February Notice to be filed in records established by state statutes. ...................................................8

iii

B. The state statutes and City ordinance require the February Notice identify the proper owner. ...............................................9

C. Texas common law does not impart constructive notice under these circumstances. ...............................................................10

D. The City issued two notices that did not constitute constructive notice to a purchaser as required under the Policy, state statutes, City ordinance, or common law. ...........................................12

1. The January Notice was defectively filed by the City. ....12

2. The February Notice was also defective pursuant to the Policy, applicable state statutes, City ordinance, and Texas case law. ................................................................13

E. Plaintiffs erroneously argue that the state statutes do not apply to the Policy. ............................................................................14

PRAYER .........................................................................................................18

CERTIFICATE OF COMPLIANCE ..................................................................20

CERTIFICATE OF SERVICE ...........................................................................21

APPENDIX TO APPELLANT'S UNOPPOSED PETITION FOR PERMISSION TO APPEAL AMENDED ORDER GRANTING PLAINTIFFS' SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR PERMISSION TO APPEAL AND TO STAY PROCEEDINGS PENDING APPEAL ............................................................22

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Certain Underwriters at Lloyd's of London Subscribing to Policy Number: £FINFR0901509 v. Cardtronics, Inc.*,
438 S.W.3d 770 (Tex. App.—Houston [1st Dist.] 2014, no pet.) .......................8

*Chicago Title Ins. Co. v. McDaniel*,
875 S.W.2d 310 (Tex. 1994) ...........................................................................17

*City of San Antonio v. D'Hanis State Bank*,
No. 04-10-00181-CV, 2010 WL 3249956 (Tex. App.—San Antonio,
Aug. 18, 2010, no pet.) (mem. op.)..............................................................2, 13

*Coker v. Coker*,
650 S.W.2d 391(Tex. 1983)..............................................................................16

*First S. Props., Inc. v. Vallone*,
533 S.W.2d 339, 340 (Tex. 1976) .....................................................................12

*Gross v. Innes*,
988 S.W.2d 727 (Tex. 1998) (per curiam) ..........................................................6

*Gulf Coast Asphalt Co. v. Lloyd*,
__ S.W.3d __, No. 14-13-00991-CV, 2015 WL 393407 (Tex. App.—
Houston [14th Dist.] January 29, 2015, no pet.)..................................................7

*Gulley v. State Farm Lloyds*,
350 S.W.3d 204 (Tex. App.—San Antonio 2011, no pet.) .................................6

*Hebert v. JJT Constr.*,
438 S.W.3d 139 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ................6, 7

*Jones v. P.A.W.N. Enters.*,
988 S.W.2d 812 (Tex. App.—Amarillo 1999, pet. denied) ..............................12

*Lone Star Gas Co. v. Sheaner*,
305 S.W.2d 150 (Tex. 1957) .............................................................................11

*Martinka v. Commw. Land Title Ins. Co.*,
836 S.W.2d 773 (Tex. App.—Houston [1st Dist.] 1992, writ denied)......... 17-18

*Noble Mortg. & Invs. LLC v. D&M Vision Invs., LLC*,
340 S.W.3d 65 (Tex. App.—Houston [1st Dist.] 2011, no pet.)........................11

*Ogden v. Dickinson State Bank*,
662 S.W.2d 330 (Tex. 1983) ...............................................................................16

*Safeco Lloyds Ins. Co. v. Allstate Ins. Co.*,
308 S.W.3d 49 (Tex. App.—San Antonio 2009, no pet.) ...................................4

*Sanchez v. Telles*,
960 S.W.2d 762 (Tex. App.—El Paso 1997, pet. denied)..................................11

*State Farm Lloyds v. Gulley*,
399 S.W.3d 242 (Tex. App.—San Antonio 2012, no pet.) ................................16

*Stewart Title Guar. Co. v. Cheatham*,
764 S.W.2d 315 (Tex. App.—Texarkana 1988, writ denied) ............................18

*Sw. Props., L.P. v. Lite-Dec of Tex., Inc.*,
989 S.W.2d 69 (Tex. App.—San Antonio 1998, pet. denied)............................4

*Sw. Title Ins. Co. v. Woods*,
449 S.W.2d 773 (Tex. 1970) ...............................................................................11

*Tamburine v. Ctr Sav. Ass'n,*
583 S.W.2d 942 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.)......................17

*Wilson v. Dvorak*,
228 S.W.3d 228 (Tex. App.—San Antonio 2007, pet. denied).........................12

**RULES**

San Antonio, Tex. Code of Ordinances ch. 6, art. VIII, § 6-162(b)(1-2)
(2014)....................................................................................................................10

TEX. CIV. PRAC. & REM. CODE § 51.014(d)...............................................................6

TEX. CIV. PRAC. & REM. CODE § 51.014(f)................................................................7

TEX. INS. CODE § 2703.001 .......................................................................................8

TEX. LOC. GOV'T CODE § 193.003(a) ..................................................................10

TEX. LOC. GOV'T CODE § 193.003(b) ..................................................................10

TEX. LOC. GOV'T CODE § 214.001(e)......................................................9-10, 13, 16-17

TEX. PROP. CODE § 13.002 ..........................................................................9, 13

TEX. R. APP. P. 28.3(e)(1) ...........................................................................x

TEX. R. APP. P. 25.1(d)................................................................................x

TEX. R. APP. P. 28.3(k)................................................................................x

**OTHER AUTHORITY**

BLACK'S LAW DICTIONARY 278 (10th ed. 2014) .......................................................11

# STATEMENT OF THE CASE

**Nature of the Case:**     The underlying proceeding brought by Vantage Bank Texas, Successor by Merger to D'Hanis State Bank, and Banprop, L.L.C. ("Plaintiffs") against Stewart Title Guaranty Company ("Stewart") alleges the failure to honor a loan policy of title insurance issued to them by Stewart ("Policy"). Plaintiffs complain they suffered losses covered by the Policy that arose out of the City of San Antonio's ("City's") efforts to enforce a nuisance ordinance by demolishing buildings on the land that secured a loan made by Plaintiffs. Stewart contends that this loss is not covered because no notice of the City's efforts to demolish the buildings was filed in the "Public Records" as defined in the Policy.

One of the pivotal issues that determines coverage is whether the City's February 2008 demolition notice of hearing ("February Notice") was properly "recorded in the Public Records" as defined by the Policy and in conformity with applicable Texas law. The February Notice referenced and was issued to strangers to the property—identifying two incorrect owners and the wrong property address. These facts are undisputed. If the February Notice constitutes notice in the Public Records and follows state statutes, then it falls within the coverage of the Policy. However, that is not the case here.

Plaintiffs filed a summary judgment motion on the coverage issues, claiming that the loss is covered because the February Notice was recorded in the Public Records as defined in the Policy. Stewart filed a cross-motion, asserting that the February Notice was not filed in the Public Records so as to constitute constructive notice to a purchaser of the property, and thus, there is no coverage for the

Plaintiffs' claims.

Judge Salinas granted Plaintiffs' motion and denied Stewart's, finding that the Policy covered Plaintiffs' alleged losses. Judge Salinas's holding was predicated on the finding that the February Notice was filed in the Public Records so as to constitute constructive notice to a purchaser of the property.

Stewart filed a Motion to Permit Interlocutory Appeal and Request for Stay Pending Appeal. Plaintiffs did not oppose this request. On March 31, 2015, the trial court signed an agreed Amended Order Granting Plaintiffs' Second Motion for Partial Summary Judgment and Denying Defendant's Motion for Summary Judgment and Granting Defendant's Motion for Permission to Appeal and to Stay Proceedings Pending Appeal (the "Amended Order") (Apx. A). Stewart now files this Petition for Permission to Appeal the Amended Order.

**Trial Court:**              The Honorable Judge Laura Salinas, 150th District Court, Bexar County, Texas.

**Trial Court's Disposition:**  March 31, 2015 Amended Order Granting Plaintiffs' Second Motion for Partial Summary Judgment and Denying Defendant's Second Motion for Summary Judgment and Granting Defendant's Motion for Permission to Appeal and to Stay Proceedings Pending Appeal

**Parties in Court of Appeals:**  Stewart Title Guaranty Company—Appellant; Vantage Bank Texas, Successor by Merger to D'Hanis State Bank, and Banprop, L.L.C.— Appellees.

ix

## COMPLIANCE WITH TEXAS RULES OF APPELLATE PROCEDURE 28.3(e)(1), 25.1(d)

Stewart provides the following information as required by Texas Rule of Appellate Procedure 25.1(d). *See* TEX. R. APP. P. 28.3(e)(1); *see also* TEX. R. APP. P. 25.1(d).

1.     The trial court and trial court number and style: *Vantage Bank Texas, Successor by Merger to D'Hanis State Bank, and Banprop, L.L.C., Plaintiffs v. Stewart Title Guaranty Company, Defendant*, Cause No. 2013-CI-14899, in the 150th District Court of Bexar County, Texas.

2.     The order being appealed is the March 31, 2015 Amended Order Granting Plaintiffs' Second Motion for Partial Summary Judgment and Denying Defendant's Second Motion for Summary Judgment and Granting Defendant's Motion for Permission to Appeal and to Stay Proceedings Pending Appeal.

3.     Appellant Stewart is filing this Petition and desires to appeal the Amended Order.

4.     The court to which the appeal is taken is the Court of Appeals for the Fourth District of Texas, at San Antonio, Texas.

5.     If this Petition is granted, the appeal will be governed by the rules for accelerated appeals. TEX. R. APP. P. 28.3(k).

## STATEMENT OF THE JURISDICTION

This Court has jurisdiction pursuant to section 51.014(d) of the Texas Civil Practice and Remedies Code. The trial court signed the Amended Order permitting interlocutory appeal on the basis that (1) the order involves a controlling question of law as to which there is substantial ground for difference of opinion, and (2) an immediate appeal from the order may materially advance the ultimate termination of the litigation.

## ISSUE PRESENTED

The trial court's Amended Order involves the following controlling question of law as to which there is substantial ground for difference of opinion, justifying immediate appeal under section 51.014(d) of the Civil Practice and Remedies Code:

> Whether the City's February Notice was "recorded in the Public Records" as the term "Public Records" is defined in the Policy.[1]

Resolution of this issue will determine whether a purchaser of the property would have had constructive notice of the information contained in the February Notice and whether Plaintiffs' claims would be covered based on that notice.

---

[1] Stewart reserves the right to present additional briefing on the issue presented if the Court so requests.

## STATEMENT OF FACTS

Plaintiffs sued for breach of contract,[2] claiming that Stewart breached its duty to indemnify them for losses arising from the City's efforts to enforce a nuisance ordinance by demolishing buildings on the land that secured a loan the Plaintiffs made. Plaintiffs claim that the City's two notices were filed in the Public Records and are covered by the Policy. Stewart contends neither notice was properly recorded in the Public Records so as to constitute constructive notice to a purchaser of the property and as such, there is no coverage under the Policy.

Prior to the issuance of the Policy, the City issued two defective notices of demolition for apartments located on the property. The first defective notice was issued on January 2, 2008 ("January Notice") (Apx. B). The January Notice concerned a notice of hearing to determine if the apartments on the land at issue constituted a public nuisance in need of abatement. The January Notice identified the correct property owners in the chain of title but was not recorded in the Official Public Records of Real Property in Bexar County. In a separate lawsuit between the City and Plaintiffs, Plaintiffs denied that the January Notice was constructive notice as to them because it was not properly recorded. This Court previously held that the January Notice did not bind Plaintiffs and was not constructive notice to

---

[2] On February 4, 2015, Plaintiffs added additional claims for breach of duty of good faith and fair dealing and for violations of Chapter 541 of the Texas Insurance Code. *See* Plaintiffs' Third Amended Original Petition ¶¶ 44–49 (Apx. J). Those additional claims are wholly derivative of the claim for breach of contract, and as such, the viability of those claims is contingent upon Plaintiffs' showing that Stewart is liable for breach of contract.

them because the City did not properly record the January Notice in the Official Public Records of Real Property in Bexar County. *See City of San Antonio v. D'Hanis State Bank*, No. 04-10-00181-CV, 2010 WL 3249956 at \*3 (Tex. App.—San Antonio, Aug. 18, 2010, no pet.) (mem. op.) (Apx. C).

The second notice of hearing is the February 2008 Notice. Stewart maintains that the February Notice was also defective as it failed to identify the correct property owner, and instead identified not one but two separate and wrong property owners (complete strangers) at the wrong property address (Apx. D).

The parties filed cross motions for summary judgment on the coverage issue. This first round of cross motions concerned only the impact of the January Notice. It is undisputed that the January Notice was never properly filed in the Official Public Records of Real Property of Bexar County as required by the applicable statutes. On October 20, 2014, Judge Price denied both parties' motions for summary judgment (Apx. E).

In December 2014, the parties filed a second round of cross motions for summary judgment on the coverage issue, this time focusing on the impact of only the February Notice. On January 30, 2015, Judge Salinas granted Plaintiffs' motion and denied Stewart's (Apx. F). By holding that the Policy covered Plaintiffs' alleged losses, Judge Salinas implicitly found that the defective February Notice provided constructive notice to purchasers of the property.

Stewart respectfully believes Judge Salinas's order is wrong on a pivotal legal issue—whether the defective February Notice encumbered the property and provided constructive notice to the world of the notice of demolition.

The defective February Notice simply does not and cannot constitute constructive notice to purchasers of the property. Correctly filed notices in the Official Public Records of Real Property in Bexar County (where the property is located) impose constructive notice. But, a document filed with an incorrect grantor or grantee—such as the February Notice—is not in the chain of title and thus would not constitute constructive notice. Plaintiffs do not dispute that the February Notice would not be discovered by a search of Bexar County's real property grantor-grantee index.[3]

Coverage under the particular covered risks at issue exists only if a proper notice setting forth the City's intended action and describing the land "**is recorded in the Public Records**" (Apx. G, p. 2). The precise issue is whether the City's February Notice was "recorded in the Public Records" as the term "Public Records" is defined in the Policy and as required by statute. The Policy defines

---

[3] Interestingly, the City acknowledged the errors in the January Notice and February Notice and ultimately issued a third notice to Plaintiffs on October 13, 2011 (Apx. K). The third notice was correct in form, containing none of the defects in the prior notices. Plaintiffs did not challenge the City's third notice of hearing to determine if the structure constituted a public nuisance in need of abatement and Plaintiffs entered into a demolition and abatement agreement with the City. The third notice was provided to Plaintiffs more than two years after the Policy was effective and thus is irrelevant to coverage in this case, except to the extent it demonstrates the prior notices were defective.

"Public Records" as "**records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge**" (Apx. G, p. 3).

## STANDARD OF REVIEW

The grant or denial of summary judgment is reviewed de novo, using well-settled summary judgment standards. *Safeco Lloyds Ins. Co. v. Allstate Ins. Co.*, 308 S.W.3d 49, 52 (Tex. App.—San Antonio 2009, no pet.). In addition, interpretation of a statute is a question of law that is reviewed de novo. *Sw. Props., L.P. v. Lite-Dec of Tex., Inc.*, 989 S.W.2d 69, 70 (Tex. App.—San Antonio 1998, pet. denied). Thus, all issues raised by this appeal are reviewed de novo, without any deference to the trial court's rulings.

## SUMMARY OF THE ARGUMENT

This Court should accept Stewart's appeal. As the trial court and Plaintiffs have already recognized, this is a controlling issue of law on which there are substantial grounds for difference of opinion, and an immediate appeal will materially advance the ultimate termination of the litigation.

The controlling issue of law concerns whether the City's defective February Notice is considered recorded in the "Public Records" as such term is defined by the Policy, as required by the Texas Department of Insurance Title Policy Form T-2, the Texas Government Code and by the Texas Code of Ordinance. Further,

even if such defective notice were considered properly filed in the "Public Records," is such notice, which entirely fails to identify the correct grantor, grantee and property address, considered constructive notice to a purchaser of the property for purposes of identifying encumbrances on the insured property?

If the Court finds that the February Notice at issue was defective and did not constitute constructive notice to a purchaser of the property by way of inaccurate information, then the loss is not covered on that basis. As Plaintiffs agree, resolution of this issue will materially advance the termination of this litigation. Thus, this Court should accept the appeal so that time, energy, and resources are not unnecessarily spent by the litigants and the courts in proceeding through trial based on an issue that may control its outcome, only to have judgment subsequently reversed on appeal.

## ARGUMENT AND AUTHORITIES

### I. THE COURT SHOULD ACCEPT THE APPEAL UNDER SECTION 51.014 OF THE TEXAS CIVIL PRACTICE AND REMEDIES CODE

This Court should accept Stewart's appeal pursuant to sections 51.014(d) and (f) of the Civil Practice and Remedies Code. The trial court's Amended Order involved a controlling question of law regarding a mandatory prerequisite to coverage under the Policy—whether the notices were properly filed to constitute constructive notice to a purchaser of the property. There are substantial grounds for difference of opinion on this issue, and its resolution will materially advance

the ultimate termination of the litigation because, if Stewart is correct, Plaintiffs'

claim would not be covered based on the February Notice.

### A. This appeal meets the standards for permissive interlocutory appeals under section 51.014(d).

An interlocutory order that does not dispose of all issues against all parties is

not immediately appealable, except in situations expressly authorized by statute.

*Gulley v. State Farm Lloyds*, 350 S.W.3d 204, 206 (Tex. App.—San Antonio 2011,

no pet.) (citing *Gross v. Innes*, 988 S.W.2d 727, 729 (Tex. 1998) (per curiam)).

Texas Civil Practice and Remedies Code § 51.014(d) provides as follows:

> (d)  On a party's motion or on its own initiative, a trial court in a civil action may, by written order, permit an appeal from an order that is not otherwise appealable if:
>
> (1)  the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion; and
>
> (2)  an immediate appeal from the order may materially advance the ultimate termination of the litigation.

TEX. CIV. PRAC. & REM. CODE § 51.014(d).

To satisfy these requirements, a trial court must issue a written order that includes

both the interlocutory order and a statement of the trial court's permission to

appeal the order under section 51.014(d). *Hebert v. JJT Constr.*, 438 S.W.3d 139,

141 (Tex. App.—Houston [14th Dist.] 2014, no pet.). In the statement of

-6-

permission, the trial court must identify the controlling question of law as to which there is a substantial ground for difference of opinion and must state why an immediate appeal may materially advance the ultimate termination of the litigation. *Id.* The court of appeals may then accept an appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(f).

**B.** **The Amended Order appealed involves a controlling question of law to which there is substantial ground for difference of opinion and immediate appeal will materially advance the ultimate termination of the litigation.**

As is mandated by section 51.014(d), the trial court's Amended Order on the parties' dueling summary judgment motions involves a controlling question of law as to which there is a substantial ground for difference of opinion—whether the February Notice was "recorded in the Public Records" as the term "Public Records" is defined by the Policy.

This Court's ruling on that question is controlling because it determines whether Plaintiffs may prevail on their claim of breach of the Policy based on the February Notice. *See Gulf Coast Asphalt Co. v. Lloyd*, __ S.W.3d __, No. 14-13-00991-CV, 2015 WL 393407, at *4 (Tex. App.—Houston [14th Dist.] January 29, 2015, no pet.) ("The proper scope of a permissive appeal is the determination of controlling legal issues, about which there are legitimate disagreements, necessary to the resolution of the case."). Plaintiffs agree that there is a substantial ground for difference of opinion, which is further demonstrated by the fact that no court

has addressed this specific policy language. *See Certain Underwriters at Lloyd's of London Subscribing to Policy Number: £FINFR0901509 v. Cardtronics, Inc.*, 438 S.W.3d 770, 774 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (noting permissive appeal was granted where Texas appellate courts had not addressed the specific policy language).

When the controlling legal issue addresses whether one party can properly prevail, that issue is material to the ultimate resolution or termination of the litigation. If Stewart's argument is correct, there is no coverage liability based on the February Notice. But if this Court does not accept the appeal and Stewart's arguments are eventually vindicated on a post-trial appeal, needless time, energy, and resources will have been expended by all parties and the courts. All parties and the trial court agree that allowing an immediate appeal would materially advance the termination of this litigation. This Court should accept the appeal in the interest of judicial economy.

## II. COVERAGE IS PREDICATED ON THE POLICY, STATE STATUTES AND COMMON LAW

### A. The Policy requires the February Notice to be filed in records established by state statutes.

The Texas Department of Insurance promulgates the language, terms, and definitions found in title policies issued in Texas. *See* TEX. INS. CODE § 2703.001. Specifically, the Texas Department of Insurance penned the definition of "Public

Records" that appears in the Policy. *See* Loan Policy of Title Insurance (Form T-2) (2014), *available at* http://www.tdi.texas.gov/title/documents/form_t-02.pdf (Apx. H). Plaintiffs argue that coverage for their alleged loss falls under covered risks 5 and 6 of the Policy, which cover losses based on certain enforcement actions as long as a "notice" of intent to enforce an ordinance or another police power describes the land and the notice is "recorded in the Public Records." Apx. G, pp. 1-2.

The Policy defines "Public Records" in relevant part as "**records established under state statutes** at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge." Apx. G, p. 3 (Definition 1(k)) (emphasis added).

For coverage to exist, the Policy requires that a notice describing the property be filed in the Public Records according to state statutes.

**B.    The state statutes and City ordinance require the February Notice identify the proper owner.**

The Policy's coverage, exclusions and definitions involving Public Records must be interpreted in light of applicable Texas law. Constructive notice to a third party is achieved when an instrument is properly recorded. *See* TEX. PROP. CODE § 13.002. The Texas Local Government Code permits a municipality to "file notice of the hearing in the Official Public Records of Real Property in the county in which the property is located." TEX. LOC. GOV'T CODE § 214.001(e). "**The notice**

**must contain the name and address of the owner of the affected property if that information can be determined."** *Id.* (emphasis added). It is undisputed that the City knew the name of the correct owner when it prepared and filed the February Notice, but nevertheless identified the wrong owner.

Further, the Local Government Code requires that the county clerk maintain a "well-bound alphabetical index" for all instruments related to real property. TEX. LOC. GOV'T CODE § 193.003(a). The index must be a cross-index that contains the names of the grantors, grantees, and/or parties to the instrument affecting real property. *Id.* § 193.003(b). Further, San Antonio Municipal Code section 6-162 proscribes the manner, form, and contents of the notices at issue here. "The pre-hearing notice to the owner shall be "**[p]ersonally to the owner in writing; or by letter addressed to the owner at the owner's post office address**." San Antonio, Tex. Code of Ordinances ch. 6, art. VIII, § 6-162(b)(1-2) (2014) (emphasis added). Although the February Notice was filed in the Official Public Records of Real Property for Bexar County, it did not identify the proper owner, grantor, or grantee and therefore did not provide constructive notice to a purchaser of the property or conform with either the municipal mandate or the Texas Government Code.

### C. Texas common law does not impart constructive notice under these circumstances.

In order to determine whether there is constructive notice "to purchasers for value" as described in the Policy, the Court should look to the common law. Texas

courts have consistently held that a "party is not charged with constructive notice of a recorded instrument **which is not in his chain of title**." *Sw. Title Ins. Co. v. Woods*, 449 S.W.2d 773, 774 (Tex. 1970) (emphasis added); *see also Sanchez v. Telles*, 960 S.W.2d 762, 767 (Tex. App.—El Paso 1997, pet. denied); *see also Noble Mortg. & Invs. LLC v. D&M Vision Invs., LLC*, 340 S.W.3d 65, 81 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (in Texas it is a "well-established rule that a deed or instrument lying outside of his chain of title imports no notice"). Chain of title refers to the ownership history of a piece of land, from its first owner to the present one. BLACK'S LAW DICTIONARY 278 (10th ed. 2014).

The rationale of this constructive notice rule is that "the only facilities provided by statute for finding recorded instruments pertinent to any particular title are the indices of grantors and grantees and a prospective purchaser or lienholder will have no reason to search for instruments executed by persons outside of the chain of title under which he claims." *Lone Star Gas Co. v. Sheaner*, 305 S.W.2d 150, 155-56 (Tex. 1957). "To charge one acquiring an interest in realty with notice of instruments executed by persons outside the chain of title would impose upon him the duty of making a general search of every instrument filed." *Id.* at 156. Therefore, Plaintiffs would not be charged with notice of the demolition provided by the defective February Notice, nor would a purchaser of the property.

It follows that a reasonable search by a purchaser would be under the name of each grantor from the date such grantor acquired the property going forward. *See Wilson v. Dvorak*, 228 S.W.3d 228, 234 (Tex. App.—San Antonio 2007, pet. denied) (holding that judgment creditor being able to enforce lien against innocent purchasers who had no notice of judgment lien due to creditor's abstracting and indexing of judgment under debtor's maiden name would lead to absurd result). A proper title search includes examination of the grantor-grantee indices. *Jones v. P.A.W.N. Enters.*, 988 S.W.2d 812, 823 (Tex. App.—Amarillo 1999, pet. denied) (citing *First S. Props., Inc. v. Vallone*, 533 S.W.2d 339, 340 (Tex. 1976)).

In compliance with the statutes and ordinance and common law discussed above, a municipality's notice of demolition must be properly filed in the Official Public Records of Real Property and also correctly identify the grantor, grantee, and/or owner of the real property in order to constitute constructive notice to a purchaser of the property.

**D.  The City issued two notices that did not constitute constructive notice to a purchaser as required under the Policy, state statutes, City ordinance, or common law.**

**1.  The January Notice was defectively filed by the City.**

As discussed previously, the City first issued a demolition notice in January 2008. This January Notice identified the correct property owner but was not recorded in the Official Public Records for Real Property as required by the Texas

Local Government Code.  *See* TEX. LOC. GOV'T CODE § 214.001(e).  This Court issued an opinion that properly recognized the requirement of filing the notice in the Official Public Records of Real Property and held that the January Notice was not binding on D'Hanis Bank (predecessor bank to Plaintiffs) as a subsequent lienholder.  *See D'Hanis,* 2010 WL 3249956, at *3 (Apx. C).  Now, this Court is faced with deciding whether the City's second attempt at notice, the February Notice, complied with Texas law, the Policy and whether a notice which does not name the correct owner and is not sent to the correct address constitutes constructive notice to a purchaser as required by the Policy.

> **2.    The February Notice was also defective pursuant to the Policy, applicable state statutes, City ordinance, and Texas case law.**

Because the February Notice did not identify the proper owner or property address, it was not properly filed in the "Public Records" as the Policy and state law require. Therefore, as to the land at issue it did not "impart[] **constructive notice** of matters relating to real property to purchasers for value" (Apx. G, p. 2). Only an instrument that is properly recorded is notice to all persons of the existence of that instrument.  *See* TEX. PROP. CODE § 13.002.  The parties agree that a search of the grantor-grantee index for matters affecting the land that secured the Plaintiffs' loan would not have disclosed the February Notice.

**E.** **Plaintiffs erroneously argue that the state statutes do not apply to the Policy.**

Plaintiffs contend that Texas Local Government Code § 214.001(e) does not apply and that this is a pure contract dispute based on the language of the Policy. *See* Plaintiff's Response to Defendant's Second Motion for Summary Judgment, p. 7 (Apx. I). Plaintiffs incorrectly argue that the Policy language expands constructive notice beyond notice to a purchaser and contends Stewart had notice of a filed record even when the purchaser would not be charged with notice. However, that is not what the Policy and the law mandate. With a contorted reading of the Policy, Plaintiffs have contended that the February Notice satisfies the notice requirements of covered risks 5 and 6 and imparted constructive notice to Stewart. Those covered risks provide that, subject to the Policy's exclusions, exceptions, and conditions, Stewart insures the named insured against loss or damage sustained or incurred by reason of:

> 5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those related to building and zoning) restricting, regulating, prohibiting or relating to:
>
> > (a) the occupancy, use or enjoyment of the Land;
> >
> > (b) the character, dimensions or location of any improvement erected on the Land;
> >
> > (c) subdivision of land; or

-14-

(d)     environmental protection

if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

6.     An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement action referred to in that notice.

*See* Apx. G, pp. 1-2 (emphasis added).

Covered risks 5 and 6 condition coverage on there being a "notice" of intent to enforce an ordinance or another police power that describes the land and that the notice be "recorded in the Public Records."  The term "Public Records" is defined in the Policy as follows:

"Public Records": **records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge**. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

*See* Apx. G, p. 3 (Definition 1(k))(emphasis added).

Basically, Plaintiffs argue that Stewart should have constructive notice because the February Notice identified the property by lot and block number, even

-15-

though the notice identified the wrong owners and wrong address and therefore would not be constructive notice to a purchaser. However, a plain reading of covered risks 5 and 6 makes it clear that the phrase, "[i]f a notice, describing any part of the land, is recorded in Public Records" relates not to whether the notice is complete and proper in order to comply with the Public Records definition, but simply that the notice must contain a description of the land. Courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *State Farm Lloyds v. Gulley*, 399 S.W.3d 242, 247 (Tex. App.—San Antonio 2012, no pet.) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Id.* Courts presume that the parties to a contract intend every clause to have some effect. *Id.* (citing *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex. 1983). Covered risks 5 and 6 are to be read in conjunction with the definition of Public Records, which requires the record be established under state statute. Only then is the record constructive notice to a purchaser.

The Texas Local Government Code requires the City to identify the property owner, if known. *See* TEX. LOC. GOV'T CODE § 214.001(e). There is no question that the City knew the owner's correct name and address when the February Notice

-16-

was prepared by the City. Therefore, the City was statutorily obligated to send the February Notice to the proper owners. *Id.* Failure to send the February Notice to the proper owner means the notice was not filed in the real property records so as to be in the chain of title. Therefore, a search by grantor, grantee or owner would not identify the February Notice so as to be constructive notice to a purchaser. Stewart expects Plaintiffs will argue that if the owners name is not known, the City may take other steps. That is irrelevant to whether the City filed a defective notice, which it did in this case, and whether the February Notice was in the chain of title so as to constitute constructive notice to a purchaser.

Plaintiffs have broadly claimed, without authority, that Stewart owes or owed them a duty to investigate "matters of real property" filed in Public Records. Stewart is not a title abstractor and owes no duty to examine title. *Tamburine v. Ctr Sav. Ass'n,* 583 S.W.2d 942, 947 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.). Plaintiffs cannot refute this case law. The only duty imposed on Stewart is the duty to indemnify its insured against losses caused by defects in title subject to the terms, conditions, exceptions and exclusions under the Policy. *Chicago Title Ins. Co. v. McDaniel*, 875 S.W.2d 310, 311 (Tex. 1994). A title insurance company owes no duty to point out any outstanding encumbrances. *Martinka v. Commw. Land Title Ins. Co.*, 836 S.W.2d 773, 777 (Tex. App.—Houston [1st

Dist.] 1992, writ denied); *see also Stewart Title Guar. Co. v. Cheatham*, 764 S.W.2d 315, 320-21 (Tex. App.—Texarkana 1988, writ denied).

## PRAYER

**THEREFORE,** Appellant Stewart Title Guaranty Company respectfully prays that this Court grant its Petition for Permission to Appeal the Amended Order in all respects, and grant such other and further relief, both general and special, at law or in equity, to which it is justly entitled.

Dated:  April 14, 2015     Respectfully submitted,

*/s/ I Clay Rogers*
I. Clay Rogers
State Bar No. 17172150
crogers@morganlewis.com
Ankita Puri
State Bar No. 24074920
ankita.puri@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone:  (713) 890-5000
Fax:  (713) 890-5001
*Appellate Counsel for Defendant-*
*Appellant Stewart Title Guaranty*
*Company*

Scott R. Breitenwischer
State Bar No. 02947695
scott.breitenwischer@roystonlaw.com
Andrew Nash
State Bar No. 24083550
andrew.nash@roystonlaw.com
ROYSTON, RAYZOR,
VICKERY & WILLIAMS, LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Fax: (713) 225-9945
*Trial Counsel for Defendant-Appellant*
*Stewart Title Guaranty Company*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, I. Clay Rogers, certify that this Petition for Permission to Appeal Amended Order Granting Plaintiffs' Second Motion for Partial Summary Judgment and Denying Defendant's Motion for Summary Judgment and Granting Defendant's Motion for Permission to Appeal and to Stay Proceedings Pending Appeal was prepared using Microsoft Word 2007, which indicated that the total word count (exclusive of those items listed in Texas Rule of Appellate Procedure 9.4(i)(1)) is 4,299 words.

*/s/ I. Clay Rogers*
I. Clay Rogers

## CERTIFICATE OF SERVICE

I, I. Clay Rogers, certify that on April 14, 2015, I filed and served an electronic copy of this document and all exhibits thereto via the Court's ECF system. I further certify that on this same day, I served one electronic copy of the Petition upon each of the following counsel of record for Plaintiffs-Appellees:

David B. West
David Vanderhider
COX SMITH MATTHEWS, INC.
112 E. Pecan Street, Suite 1800
San Antonio, Texas 78205

*Attorneys for Plaintiffs-Appellees*

*/s/ I Clay Rogers*
I. Clay Rogers

No. _____

_____

IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS AT SAN ANTONIO, TEXAS
_____

STEWART TITLE GUARANTY COMPANY, Defendant-Appellant

v.

VANTAGE BANK TEXAS, SUCCESSOR BY MERGER TO D'HANIS STATE
BANK, and BANPROP, L.L.C., Plaintiffs-Appellees
_____

On Appeal from the 150th Judicial District Court of Bexar County, Texas
Cause No. 2013-CI-14899
(Honorable Laura Salinas)
_____

**APPENDIX TO APPELLANT'S UNOPPOSED PETITION FOR
PERMISSION TO APPEAL AMENDED ORDER GRANTING
PLAINTIFFS' SECOND MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR
PERMISSION TO APPEAL AND TO STAY PROCEEDINGS PENDING
APPEAL**
_____

In compliance with rule 28.3 of the Texas Rules of Appellate Procedure,

Defendant-Appellant Stewart Title Guaranty Company submits this Appendix to

its Petition for Permission to Appeal Amended Order Granting Plaintiffs' Second

Motion for Partial Summary Judgment and Denying Defendant's Motion for

Summary Judgment and Granting Defendant's Motion for Permission to Appeal

and to Stay Proceedings Pending Appeal containing the following items:

-22-

Apx. A        March 31, 2015 Amended Order Granting Plaintiffs' Second Motion for Partial Summary Judgment and Denying Defendant's Motion for Summary Judgment and Granting Defendant's Motion for Permission to Appeal and to Stay Proceedings Pending Appeal

Apx. B        January 2008 Notice of Hearing

Apx. C        *City of San Antonio v. D'Hanis State Bank*, No. 04-10-00181-CV, 2010 WL 3249956 at *3 (Tex. App.—San Antonio, Aug. 18, 2010, no pet.) (mem. op.)

Apx. D        February 2008 Notice of Hearing

Apx. E        October 20, 2014 Letter from Judge Richard Price denying Stewart Title Guaranty Company's Traditional and No Evidence Motion for Summary Judgment and Vantage Bank Texas, Successor by Merger to D'Hanis State Bank's Motion for Partial Summary Judgment

Apx. F        Judge Salinas's January 30, 2015 Order Granting Plaintiffs' Second Motion for Partial Summary Judgment and Denying Defendant's Second Motion for Summary Judgment

Apx. G        Loan Policy of Title Insurance Issued by Stewart Title Guaranty Company issued to D'Hanis State Bank, and Each Successor in Ownership

Apx. H        Texas Department of Insurance T-2 Form

Apx. I        Plaintiffs' Response to Defendant's Second Motion for Summary Judgment

Apx. J        Plaintiffs' Third Amended Original Petition

Apx. K        October 2011 Notice of Hearing

# Appendix A

CAUSE NO. 2013-CI-14899

| | | |
|---|---|---|
| VANTAGE BANK TEXAS, Successor by Merger to D'Hanis State Bank and BANPROP, L.L.C., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| | § | BEXAR COUNTY, TEXAS |
| v. | § § | |
| STEWART TITLE GUARANTY COMPANY, | § § § | |
| | § | |
| Defendant. | § | 150th JUDICIAL DISTRICT |

## ORDER GRANTING DEFENDANT STEWART TITLE GUARANTY COMPANY'S MOTION TO PERMIT INTERLOCUTORY APPEAL AND REQUEST FOR STAY PENDING APPEAL

On January 6, 2015, came on for consideration Plaintiffs' Second Motion for Partial Summary Judgment ("Plaintiffs' Summary Judgment Motion") and Defendant Stewart Title Guaranty Company's Second Traditional and No Evidence Motion for Summary Judgment ("Defendant's Summary Judgment Motion"). After considering the motions, responses, summary judgment evidence, and all other matters properly before the Court, the Court is of the opinion that Plaintiffs' Summary Judgment Motion should be GRANTED and Defendant's Summary Judgment Motion should be DENIED.

On ___MAR 3 1 2015___ 2015, came on for consideration Defendant Stewart Title Guaranty Company's Motion to Permit Interlocutory Appeal and Request for Stay Pending Appeal ("Appeal and Stay Motion"). Plaintiff Vantage Bank Texas, Successor By Merger To D'Hanis State Bank, and Banprop, L. L. C., filed a response stating that it does not oppose Defendant's request for permission to appeal and to stay all pending action in the district court pending that appeal.

After considering the motion, response, and all other matters properly before the Court, the Court is of the opinion that the issue of whether the City's "February Notice" was "recorded in the Public Records" as the term "Public Records" is defined in the policy is a controlling question of law as to which there is a substantial ground for difference of opinion, and that an immediate appeal would materially advance the ultimate termination of the litigation. The Court is therefore of the opinion that the Appeal and Stay Motion should be GRANTED.

It is, THEREFORE, ORDERED that Plaintiffs' Second Motion for Partial Summary Judgment is GRANTED in its entirety.

It is further ORDERED that the issue of coverage is determined in Plaintiffs' favor as a matter of law such that the Loan Policy of Title Insurance issued by Defendant Stewart Title Guaranty Company, policy serial number M-5952-000007292, affords coverage for Plaintiffs' losses sustained or incurred by reason of (1) the violation or enforcement of a law, ordinance, or governmental regulation restricting, regulating, prohibiting, or relating to the covered property, or (2) an enforcement action based on the exercise of a governmental police power.

It is further ORDERED that Defendant Stewart Title Guaranty Company's Second Traditional and No Evidence Motion for Summary Judgment is DENIED in its entirety.

It is further ORDERED that Defendant Stewart Title Guaranty Company's Motion to Permit Interlocutory Appeal and Request for Stay Pending Appeal is GRANTED.

It is further ORDERED that Defendant Stewart Title Guaranty Company is permitted to appeal the issue of whether the City's "February Notice" was "recorded in the Public Records" as the term "Public Records" is defined in the policy and as contained in this Amended Order to the

2

Court of Appeals for the Fourth Court of Appeals District, pursuant to section 51.014(d) of the Texas Civil Practice and Remedies Code and rule 28.3 of the Texas Rules of Appellate Procedure.

It is further ORDERED that all proceedings in the district court in this cause are stayed pending resolution of the interlocutory appeal.

SIGNED THIS _____ day of ___MAR 3 1 2015___, 2015.

Laura Salinas
Presiding Judge
166th District Court
Bexar County, Texas

THE HONORABLE LAURA SALINAS,
JUDGE PRESIDING

APPROVED AS TO FORM:

By: _____

David B. West
State Bar No. 21196400
dbwest@coxsmith.com
David A. Vanderhider
State Bar No. 24070787
dvanderhider@coxsmith.com
COX SMITH MATTHEWS INCORPORATED
112 E. Pecan Street, Suite 1800
San Antonio, Texas 78205
(210) 554-5500 — Telephone
(210) 226-8395 Facsimile

*Attorneys for Vantage Bank Texas,*
*Successor by Merger to D'Hanis State Bank,*
*and Banprop, L.L.C.*

By: _____

I. Clay Rogers
State Bar No. 17172160
crogers@morganlewis.com
Ankita Puri
State Bar No. 24074920
ankita.puria4morganlewis.com
MORGAN LEWIS & BOCKIUS, LLP
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
(713) 890-5000 — Telephone
(713) 890-5001 — Facsimile

Scott Breitenwischer
State Bar No. 02947695
Scott.breitenwischerAroystonlaw.cotn
Andrew Nash
State Bar No. 24083550
Andrew.nash@roystonlaw.com
ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.
Pennzoil Place
711 Louisiana Street, Suite 500
Houston, Texas 77002-8380
(713) 224-8380 — Telephone
(713) 225-9945 — Facsimile

*Attorneys for Stewart Title Guaranty Company*

4

DB1/ 82768049.1

# Appendix B



# CITY OF SAN ANTONIO

## NOTICE OF HEARING

OWNER'S NAME: Cantu Raul S. Family Ltd. Prtnrshp #2
8546 Broadway St. Ste 234
San Antonio, TX 78217-6348

PROPERTY AT: 119 Jackson-Keller

LEGAL DESCRIPTION: NCB 10060 BLK 13 LOT 7

A Public Hearing will be held before the City of San Antonio Dangerous Structure Determination Board on <u>January 14, 2008</u> at <u>8:30 A.M</u> in the City Council Chambers of the Municipal Plaza Building located at 114 W. Commerce Street. All owners, mortgagees, or lienholders of record have been notified of this hearing.

The purpose of this hearing is to determine whether the above property constitutes a public nuisance in need of abatement. Any persons having an interest in the property or who may be affected by the conditions of the property shall be afforded the opportunity to be heard and to present evidence for the Board's consideration.

If the property is determined to be a public nuisance, the Board may order remediation action up to and including demolition of the structure at the owner's expense.

CONTACT FOR FURTHER INFORMATION:

LT1-79-8887-1

DAVID D. GARZA
Director of Housing & Neighborhood Services
P. O. Box 839966
San Antonio, Texas 78283-3966

*The Municipal Plaza Building is wheelchair accessible. Accessible parking spaces are available upon request. Interpreters for the deaf must be requested at least 24 hours prior to the hearing by calling 207-7245-TDD*

LT2-0-0-1

STATE OF TEXAS }
COUNTY OF BEXAR }

This instrument was acknowledged before me on the 2 day of Jan, 200 8, by DAVID D. GARZA, Director of Housing & Neighborhood Services, on behalf of the CITY OF SAN ANTONIO, Bexar County, Texas, a Municipal Corporation.

REYES HERNANDEZ
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 11-18-2009

Notary Public, State of Texas

*AFTER RECORDING RETURN TO:*

*HOUSING & NEIGHBORHOOD SERVICES DEPARTMENT*
*ATTN: DAVID D. GARZA*
*P. O. Box 839966*
*San Antonio, Texas 78283-3966*

Doc# 8887 Fees: $0.00
01/04/2008 3:05PM # Pages 1
Filed & Recorded in the Official Public
Records of BEXAR COUNTY
GERARD RICKHOFF COUNTY CLERK

EXHIBIT
6

DHSB-Banprop - 000747

# Appendix C

**2010 WL 3249956**
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.

**MEMORANDUM OPINION**
Court of Appeals of Texas,
San Antonio.

CITY OF SAN ANTONIO, Texas, Appellant

v.

D'HANIS STATE BANK, Appellee.

No. 04-10-00181-CV.  |  Aug. 18, 2010.

From the 73rd Judicial District Court, Bexar County, Texas, Trial Court No. 2010-CI-01778; Michael Peden, Judge Presiding.

**Attorneys and Law Firms**

Savita Rai, Clarissa L. Chavarria, Assistant City Attorneys, Samuel C. Adams, Office of the City Attorney, San Antonio, TX, for Appellant.

R. Harry Akin, Akin & Akin LLP, Georgetown, TX, for Appellee.

Sitting: CATHERINE STONE, Chief Justice, PHYLIS J. SPEEDLIN, Justice, STEVEN C. HILBIG, Justice.

**Opinion**

**MEMORANDUM OPINION**

Opinion by CATHERINE STONE, Chief Justice.

**\*1** The City of San Antonio, Texas ("City") appeals the trial court's orders denying the City's plea to the jurisdiction and granting a temporary injunction in favor of D'Hanis State Bank ("Bank"). The City contends the trial court erred in denying its plea to the jurisdiction because the Bank lacked standing to challenge an order of the City's Dangerous Structure Determination Board ("Board"). We affirm the trial court's orders.

**Background**

On January 14, 2008, the Board issued a demolition order finding an apartment complex (the "Property") owned by The Raul S. Cantu Family Limited Partnership No. 2 ("Cantu") constituted a public nuisance and ordering its demolition. Although notice of the hearing regarding the demolition order was filed in the public notice records of Bexar County, the notice was not filed in the real property records. Cantu sought judicial review of the demolition order by filing a petition in district court in February of 2008.

In September of 2009, Cantu sold the Property to S.A. Eden Roc Apartments, LLC ("S.A. Eden Roc"). The Bank financed the purchase price for the Property and a construction loan for its renovation. The Warranty Deed with Vendor's Lien, which documented both the conveyance of the Property to S.A. Eden Roc and the Bank's vendor's lien, and the Deed of Trust, which further documented the Bank's lien, were filed in the real property records on September 8, 2009.



EXHIBIT
14

On September 18, 2009, the City granted S.A. Eden Roc a series of building permits relating to the renovation of the Property, and renovation work was commenced with financing provided by the Bank. On September 24, 2009, the City revoked the permits. At that time, the Bank had loaned approximately $516,000.00 to S.A. Eden Roc. Approximately $380,000.00 of the loan proceeds was used to pay the purchase price for the Property, and the balance of the loan proceeds was spent on renovations.

On October 15, 2009, the City moved to dismiss Cantu's lawsuit seeking judicial review of the demolition order, asserting, among other grounds, that Cantu had sold the Property. In addition to being filed over one and one-half years after Cantu filed the lawsuit, the City's motion was filed after the City was on notice that the Property had been sold, after the City granted S.A. Eden Roc permits to renovate the Property, and after the Bank had advanced substantial funds to renovate the Property. On October 21, 2009, the trial court signed an order granting the City's motion and dismissing Cantu's lawsuit.

On November 12, 2009 the Bank received notice that the City revoked the permits previously granted to S.A. Eden Roc and ordered work on the Property to stop. The Bank did not have notice of the demolition order until mid-December of 2009.

On February 4, 2010, the Bank filed suit against the City requesting a temporary restraining order and injunctive relief to prevent the demolition of the apartment complex. The City filed a plea to the jurisdiction, asserting the Bank lacked standing to pursue the relief it sought. The trial court denied the City's plea to the jurisdiction and granted a temporary injunction in favor of the Bank. The City appeals.

## PLEA TO THE JURISDICTION

*2 We review a trial court's order granting or denying a plea to the jurisdiction de novo. *Houston Mun. Employees Pension Sys. v. Ferrell*, 248 S.W.3d 151, 156 (Tex.2007). We consider the facts alleged by the plaintiff, and we consider evidence submitted by the parties to the extent the evidence is relevant to the jurisdictional issue. *Id.*

The City contends the trial court erred in denying its plea to the jurisdiction because the Bank lacked standing to challenge the demolition order. The City asserts the Bank lacked standing because: (1) section 214.0012 of the Texas Local Government Code permits judicial review of a demolition order to be sought only by an owner or lienholder aggrieved by the order at the time the order is issued; (2) section 214.0012 provides the exclusive method for seeking judicial review of the demolition order; and (3) the Bank cannot collaterally attack the demolition order by seeking injunctive relief.[1] Each of these contentions is based on the premise that the Bank is seeking judicial review of the order by challenging the validity of the order as against all parties. Although the Bank's pleadings could be broadly read as asserting such a challenge, the Bank clarified its position at the hearing before the trial court. The Bank argued at the hearing that the trial court was not deprived of jurisdiction because the demolition order was unenforceable as against the Bank, which was an innocent lender for value similar to a bona fide purchaser. The Bank explained:

> But the most important problem with this case is this-it's not whether the Cantus were given their rights and had their rights of the appeals and took care of that or whether Falcon Bank [Cantu's lender and the prior lienholder] had their rights and pursued those rights. It's what about D'Hanis State Bank, who had no actual and no constructive notice of this proceeding, of the order or of anything else. Because this building was allowed to stay up, because there was no publication of notice that could have been put in the real property records and would have given constructive notice to subsequent lien holders like this bank-because that wasn't done, they took the property as an innocent-well, they were an innocent lien extender or an innocent lender for value.

The purpose of the Uniform Declaratory Judgments Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." TEX. CIV. PRAC. & REM.CODE ANN. § 37.002(b) (Vernon 2008). Under the Act, a person interested under a deed or written contract is entitled to a determination regarding any question of construction

or validity arising under the deed or contract and to obtain a declaration of the person's rights, status, or legal relations thereunder. *Id.* at § 37.004(a). In this case, the Bank is seeking a declaration of its rights under the Warranty Deed and Deed of Trust. In particular, the Bank is seeking a declaration that its rights under the Warranty Deed and Deed of Trust preclude the City from proceeding with the demolition of the apartment complex. Because the Bank is a person interested under a deed or written contract, the Act gives the Bank standing to seek declaratory relief, and the trial court did not err in denying the City's plea to the jurisdiction.

## TEMPORARY INJUNCTION

**\*3** The decision to grant a temporary injunction lies in the sound discretion of the trial court and is subject to reversal only for a clear abuse of that discretion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex.2002); *Khaledi v. H.K. Global Trading, Ltd.*, 126 S.W.3d 273, 280 (Tex.App.-San Antonio 2003, no pet.). The court of appeals cannot reverse the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles. *Butnaru,* 84 S.W.3d at 211. An abuse of discretion does not exist when the trial court bases its decision on conflicting evidence and the evidence reasonably supports its conclusion. *Butnaru,* 84 S.W.3d at 211; *Khaledi,* 126 S.W.3d at 280.

The purpose of a temporary injunction is to preserve the status quo until a final hearing on the merits. *Butnaru,* 84 S.W.3d at 204; *Khaledi,* 126 S.W.3d at 279. To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru,* 84 S.W.3d at 204; *Khaledi,* 126 S.W.3d at 280.

In its brief, the City does not directly address which element it contends the Bank failed to establish. The City does, however, assert that the City's failure to file the notice of the hearing regarding the demolition order in the real property records does not render the demolition order void. We construe this argument as a challenge to whether the Bank established a probable right to relief in view of the notice filed by the City. In establishing a probable right to the relief it sought, the Bank was not required to establish that it would prevail on final trial. *Khaledi,* 126 S.W.3d at 280.

Status as a bona fide lender/mortgagee is obtained if the lender/mortgagee obtained an interest in the property in good faith, for value and without notice of the claim or interest of a third party. *Houston First Am. Sav. v. Musick,* 650 S.W.2d 764, 769 (Tex.1983); *World Sav. Bank, F.S.B. v. Gantt,* 246 S.W.3d 299, 306 (Tex.App.-Houston [14th Dist.] 2008, no pet.). The City appears to argue that the Bank is not protected as a bona fide lender because the City filed a notice of the hearing regarding the demolition order with the Bexar County Clerk. *See Musick,* 650 S.W.2d at 769 (requiring bona fide lender to be without notice of a claim or interest of a third party); *Gantt,* 246 S.W.3d at 306 (same). However, section 214.001(e) of the Local Government Code provides that a notice of hearing regarding a demolition order is binding on subsequent grantees and lienholders only if the municipality files the notice of hearing in the Official Public Records of Real Property. *See* TEX. LOC. GOV'T CODE ANN.. § 214.001(e) (Vernon Supp.2009) (providing filing of the notice of the hearing regarding a demolition order is binding on subsequent lienholders after the filing of the notice in the Official Public Records of Real Property). The evidence is undisputed that the City's notice of hearing was filed in the public notice records which are maintained separately from the real property records.[2] Accordingly, under section 214.001(e), the notice was not binding on the Bank as a subsequent lienholder, and the City has failed to meet its burden of showing that the trial court abused its discretion in granting the temporary injunction.

## CONCLUSION

**\*4** The trial court's orders are affirmed.

Footnotes

1    We note that the cases cited by the City to support its contention that a demolition order is not subject to collateral attack involve subsequent proceedings brought by the individuals or entities that owned the property at the time the demolition order was issued.

2    Although the City cites cases that hold that an instrument is considered recorded when deposited for recording with the clerk even if the instrument is not recorded by the clerk, the clerk in this case had recorded the notice of hearing. No evidence was presented that the City requested that the notice be recorded in the real property records instead of the public notice records where the clerk testified that such notices are routinely recorded. Accordingly, the cases cited by the City are readily distinguishable.

---

**End of Document**                                    © 2013 Thomson Reuters. No claim to original U.S. Government Works.

# Appendix D



SCANNED

# CITY OF SAN ANTONIO



LT1-77-20080021460-1

### NOTICE OF HEARING

OWNER'S NAME: OLIVARES, PABLO GARZA  
                   C/O LUIS A GALVAN  
                   1831 TEXAS AVE  
                   SAN ANTONIO TEXAS 78228

PROPERTY AT: 14420 HIGGINS RD

LEGAL DESCRIPTION:     NCB    10060     BLK   13    LOT   7

A Public Hearing will be held before the City of San Antonio Dangerous Structure Determination Board on **February 11, 2008** at **8:30 A.M.** in the **City Council Chambers of the Municipal Plaza Building** located at **114 W. Commerce Street.** All owners, mortgagees, or lienholders of record have been notified of this hearing.

The purpose of this hearing is to determine whether the above property constitutes a public nuisance in need of abatement. Any persons having an interest in the property or who may be affected by the conditions of the property shall be afforded the opportunity to be heard and to present evidence for the Board's consideration.

If the property is determined to be a public nuisance, the Board may order remediation action up to and including demolition of the structure at the owner's expense.

CONTACT FOR FURTHER INFORMATION:

DAVID D. GARZA  
Director of Housing & Neighborhood Services  
P. O. Box 839966  
San Antonio, Texas 78283-3966

*The Municipal Plaza Building is wheelchair accessible. Accessible parking spaces are available upon request. Interpreters for the deaf must be requested at least 24 hours prior to the hearing by calling 207-7245-TDD*

STATE OF TEXAS      }  
COUNTY OF BEXAR   }

This instrument was acknowledged before me on the ___30___ day of ___Jan___, 200_8_ by DAVID D. GARZA, Director of Housing & Neighborhood Services, on behalf of the CITY OF SAN ANTONIO, Bexar County, Texas, a Municipal Corporation.

REYES HERNANDEZ  
NOTARY PUBLIC  
STATE OF TEXAS  
My Comm Exp 11-18-2009

_____  
Notary Public, State of Texas

*AFTER RECORDING RETURN TO:*

*HOUSING & NEIGHBORHOOD SERVICES DEPARTMENT*  
*ATTN: DAVID D. GARZA*  
*P. O. Box 839966*  
*San Antonio, Texas 78283-3966*

LT2-13331-1488-2

**EXHIBIT**

**7**

DHSB-Banprop - 000064

# Appendix E



# RICHARD PRICE
# JUDGE

285TH DISTRICT COURT
BEXAR COUNTY COURTHOUSE
SAN ANTONIO, TX 78205

(210) 335-2086

October 20, 2014

**VIA EMAIL** dbwest@coxsmith.com
Mr. David B. West
**VIA EMAIL** dvanderhider@coxsmith.com
Mr. David A. Vanderhider
Cox Smith Matthews Incorporated
112 East Pecan, Ste. 1800
San Antonio, Texas 78205

**VIA EMAIL** scott.breitenwischer@roystonlaw.com
Mr. Scott R. Breitenwischer
**VIA EMAIL** andrew.nash@roystonlaw.com
Mr. Andrew R. Nash
Royston, Rayzor, Vickery & Williams, LLP
711 Louisiana, Ste. 500
Houston, Texas 77002

RE: Cause No. 2013-CI-14899
Vantage Bank Texas, et al. vs. Stewart Title Guaranty Company
Filed in the 150th District Court

Dear Counsel:

    After considering Stewart Title Guaranty Company's Traditional and No Evidence Motion for Summary Judgment and Vantage Bank Texas, Successor by Merger to D'Hanis State Bank's Motion for Partial Summary Judgment, it is my ruling that all motions are denied. I request that Mr. West prepare the order and circulate it to opposing counsel for approval as to form.

Very truly yours,

Judge Richard Price
285th District Court

RP/dg



**EXHIBIT**

1

# Appendix F

Cause No. 2013-CI-14899

| | | |
|---|---|---|
| VANTAGE BANK TEXAS, SUCCESSOR | § | IN THE DISTRICT COURT |
| BY MERGER TO D'HANIS STATE BANK, | § | |
| and BANPROP, L. L. C., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | 150TH JUDICIAL DISTRICT |
| v. | § | |
| | § | |
| STEWART TITLE GUARANTY COMPANY, | § | |
| | § | |
| Defendant. | § | BEXAR COUNTY, TX |

## ORDER GRANTING PLAINTIFFS' SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT

On January 6, 2015, came on for consideration Plaintiffs' Second Motion for Partial Summary Judgment ( "Plaintiffs' Motion") and Defendant Stewart Title Guaranty Company's Second Traditional and No Evidence Motion for Summary Judgment ("Defendant's Motion"). After considering the motions, responses, summary judgment evidence, and all other matters properly before the Court, the Court is of the opinion that Plaintiffs' Motion should be **GRANTED** and Defendant's Motion should be **DENIED**.

It is, therefore, **ORDERED** that Plaintiffs' Second Motion for Partial Summary Judgment is **GRANTED** in its entirety.

It is further **ORDERED** that the issue of coverage is determined in Plaintiffs' favor as a matter of law such that the Loan Policy of Title Insurance issued by Defendant Stewart Title Guaranty Company, policy serial number M-5952-000007292, affords coverage for Plaintiffs' losses sustained or incurred by reason of (1) the violation or enforcement of a law, ordinance, or

governmental regulation restricting, regulating, prohibiting, or relating to the covered property, or (2) an enforcement action based on the exercise of a governmental police power.

It is further **ORDERED** that Defendant Stewart Title Guaranty Company's Second Traditional and No Evidence Motion for Summary Judgment is **DENIED** in its entirety.

SIGNED THIS **30** day of January, 2015.

THE HONORABLE LAURA SALINAS
JUDGE PRESIDING

2

APPROVED AS TO FORM ONLY:


By: _____

David B. West
State Bar No. 21196400
dbwest@coxsmith.com
David A. Vanderhider
State Bar No. 24070787
dvanderhider@coxsmith.com
Bonnie K. Kirkland
State Bar No. 24074539
bkirkland@coxsmith.com
COX SMITH MATTHEWS INCORPORATED
112 E. Pecan Street, Suite 1800
San Antonio, Texas 78205
(210) 554-5500 – Telephone
(210) 226-8395 – Facsimile

*ATTORNEYS FOR VANTAGE BANK TEXAS, SUCCESSOR BY MERGER TO D'HANIS STATE BANK, AND BANPROP, L.L.C.*


By: _____

Scott Breitenwischer
State Bar No. 02947695
Scott.breitenwischer@roystonlaw.com
Andrew Nash
State Bar No. 24083550
Andrew.nash@roystonlaw.com
Royston, Rayzor, Vickery & Williams, L.L.P.
Pennzoil Place
711 Louisiana Street, Suite 500
Houston, Texas 77002-8380
(713) 224-8380 – Telephone
(713) 225-9945 – Facsimile

*ATTORNEYS FOR STEWART TITLE GUARANTY COMPANY*

5766297.1

# Appendix G

## LOAN POLICY OF TITLE INSURANCE
## ISSUED BY



# stewart
## title guaranty company

**Any notice of claim and any other notice or statement in writing required to be given the Company under this Policy must be given to the Company at the address shown in Section 17 of the Conditions.**

## COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS, STEWART TITLE GUARANTY COMPANY, a Texas corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 11, 13 and 14, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from:
   (a) A defect in the Title caused by:
      (i) forgery, fraud, undue influence, duress, incompetency, incapacity or impersonation;
      (ii) failure of any person or Entity to have authorized a transfer or conveyance;
      (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized or delivered;
      (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
      (v) a document executed under a falsified, expired or otherwise invalid power of attorney;
      (vi) a document not properly filed, recorded or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
      (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Lack of good and indefeasible Title.
4. No right of access to and from the Land.
**Covered Risks continued on next page.**

IN WITNESS WHEREOF, Stewart Title Guaranty Company has caused this policy to be signed and sealed by its duly authorized officers as of Date of Policy shown in Schedule A.

Countersigned by:

_____
Authorized Signature

Service Title Company
Company

San Antonio, TX
City, State

# stewart
title guaranty company

_____
Senior Chairman of the Board

_____
Chairman of the Board

_____
President



**SERVICE TITLE COMPANY**
7334 Blanco Road
San Antonio, Texas 78216
(210) 344-8820

Policy Serial No. **M-5952-000007292**

T-2 Loan Policy (5-.

ID: 430029

**EXHIBIT**
**4**
tabbies

D-00156

5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting or relating to:
    (a) the occupancy, use or enjoyment of the Land;
    (b) the character, dimensions or location of any improvement erected on the Land;
    (c) subdivision of land; or
    (d) environmental protection

if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.

7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.

8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.

9. The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title. This Covered Risk includes but is not limited to insurance against loss from any of the following impairing the lien of the Insured Mortgage:
    (a) forgery, fraud, undue influence, duress, incompetency, incapacity or impersonation;
    (b) failure of any person or Entity to have authorized a transfer or conveyance;
    (c) the Insured Mortgage not being properly created, executed, witnessed, sealed, acknowledged, notarized or delivered;
    (d) failure to perform those acts necessary to create a document by electronic means authorized by law;
    (e) a document executed under a falsified, expired or otherwise invalid power of attorney;
    (f) a document not properly filed, recorded or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
    (g) a defective judicial or administrative proceeding.

10. The lack of priority of the lien of the Insured Mortgage over any other lien or encumbrance.

11. The lack of priority of the lien of the Insured Mortgage
    (a) as security for each and every advance of proceeds of the loan secured by the Insured Mortgage over any statutory or constitutional mechanic's, contractor's, or materialman's lien for services, labor or material having its inception on or before Date of Policy; and
    (b) over the lien of any assessments for street improvements under construction or completed at Date of Policy.

12. The invalidity or unenforceability of any assignment of the Insured Mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the Insured Mortgage in the named Insured assignee free and clear of all liens.

13. The invalidity, unenforceability, lack of priority or avoidance of the lien of the Insured Mortgage:
    (a) resulting from the avoidance in whole or in part, or from a court order providing an alternative remedy, of any transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction creating the lien of the Insured Mortgage because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency or similar creditors' rights laws; or
    (b) because the Insured Mortgage constitutes a preferential transfer under federal bankruptcy, state insolvency or similar creditors' rights laws by reason of the failure of its recording in the Public Records:
        (i) to be timely, or
        (ii) to impart notice of its existence to a purchaser for value or a judgment or lien creditor.

14. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 13 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the Insured Mortgage in the Public Records.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting or relating to:
    (i) the occupancy, use, or enjoyment of the Land;
    (ii) the character, dimensions or location of any improvement erected on the Land;
    (iii) subdivision of land; or
    (iv) environmental protection;
or the effect of any violation of these laws, ordinances or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims or other matters:
    (a) created, suffered, assumed or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14); or
    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing business laws of the state where the Land is situated.

D-00157

5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is:

(a) a fraudulent conveyance or fraudulent transfer; or

(b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

8. The refusal of any person to purchase, lease or lend money on the estate or interest covered hereby in the land described in Schedule A because of Unmarketable Title.

## CONDITIONS

**1. DEFINITION OF TERMS.**

(a) "Amount of Insurance": the amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Section 10 of these Conditions.

(b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.

(c) "Entity": A corporation, partnership, trust, limited liability company or other similar legal entity.

(d) "Indebtedness": The obligation secured by the Insured Mortgage including one evidenced by electronic means authorized by law, and if that obligation is the payment of a debt, the Indebtedness is the sum of:

(i) the amount of the principal disbursed as of Date of Policy;

(ii) the amount of the principal disbursed subsequent to Date of Policy;

(iii) construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the Land or related to the Land that the Insured was and continued to be obligated to advance at Date of Policy and at the date of the advance;

(iv) interest on the loan;

(v) prepayment premiums, exit fees and other similar fees or penalties allowed by law;

(vi) expenses of foreclosure and any other costs of enforcement;

(vii) amounts advanced to assure compliance with laws or to protect the lien or the priority of the lien of the Insured Mortgage before the acquisition of the estate or interest in the Title;

(viii) amounts to pay taxes and insurance; and,

(ix) reasonable amounts expended to prevent deterioration of improvements; but reduced by the total of all payments and by any amount forgiven by an Insured.

(e) "Insured": the Insured named in Schedule A.

(i) The term "Insured" also includes:

(A) the owner of the Indebtedness and each successor in ownership of the Indebtedness, whether the owner or successor owns the Indebtedness for its own account or as a trustee or other fiduciary, except a successor who is an obligor under the provisions of Section 12(c) of these Conditions;

(B) if the Indebtedness is evidenced by a "transferable record," the person or Entity who has "control" of the "transferable record," as these terms are defined by applicable electronic transactions law;

(C) successors to an Insured by dissolution, merger, consolidation, distribution or reorganization;

(D) successors to an Insured by its conversion to another kind of Entity;

(E) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title:

(1) If the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,

(2) If the grantee wholly owns the named Insured, or

(3) If the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity;

(F) any government agency or instrumentality that is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the Indebtedness secured by the Insured Mortgage, or any part of it, whether named as an Insured or not;

(ii) With regard to (A), (B), (C), (D) and (E) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured, unless the successor acquired the Indebtedness as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance or other matter insured against by this policy.

(f) "Insured Claimant": an Insured claiming loss or damage.

(g) "Insured Mortgage": the Mortgage described in paragraph 4 of Schedule A.

(h) "Knowledge" or "Known": actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(i) "Land": the land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(j) "Mortgage": mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(k) "Public Records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(l) "Title": the estate or interest described in Schedule A.

(m) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title or a prospective purchaser of the Insured Mortgage to be released from the obligation to purchase, lease or lend if there is a contractual condition requiring the delivery of marketable title.

**2. CONTINUATION OF INSURANCE.**

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured after acquisition of the Title by an Insured or after conveyance by an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

**3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.**

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) below, or (ii) in case Knowledge shall come to an Insured of any claim of title or interest that is adverse to the Title or the lien of the Insured Mortgage, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

Subject to the provisions of this policy, upon acquisition of all or any part of the Title pursuant to the provisions of Section 2 of these Conditions, when, after the Date of the Policy, the Insured notifies the Company as required herein of a lien, encumbrance, adverse claim or other defect in Title insured by this policy that is not excluded or excepted from the coverage of this policy, the Company shall promptly investigate the charge

D-00158

to determine whether the lien, encumbrance, adverse claim or defect or other matter is valid and not barred by law or statute. The Company shall notify the Insured in writing, within a reasonable time, of its determination as to the validity or invalidity of the Insured's claim or charge under the policy. If the Company concludes that the lien, encumbrance, adverse claim or defect is not covered by this policy, or was otherwise addressed in the closing of the transaction in connection with which this policy was issued, the Company shall specifically advise the Insured of the reasons for its determination. If the Company concludes that the lien, encumbrance, adverse claim or defect is valid, the Company shall take one of the following actions: (i) institute the necessary proceedings to clear the lien, encumbrance, adverse claim or defect from the Title as insured; (ii) indemnify the Insured as provided in this policy; (iii) upon payment of appropriate premium and charges therefor, issue to the Insured Claimant or to a subsequent owner, mortgagee or holder of the estate or interest in the Land insured by this policy, a policy of title insurance without exception for the lien, encumbrance, adverse claim or defect, said policy to be in an amount equal to the current value of the Land or, if a mortgagee policy, the amount of the loan; (iv) indemnify another title insurance company in connection with its issuance of a policy(ies) of title insurance without exception for the lien, encumbrance, adverse claim or defect; (v) secure a release or other document discharging the lien, encumbrance, adverse claim or defect; or (vi) undertake a combination of (i) through (v) herein.

4. **PROOF OF LOSS.**
In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

5. **DEFENSE AND PROSECUTION OF ACTIONS.**
(a) Upon written request by the Insured, and subject to the options contained in Sections 3 and 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.
(b) The Company shall have the right, in addition to the options contained in Sections 3 and 7, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title or the lien of the Insured Mortgage, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.
(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction and it expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order. When the Company has reasonable grounds to dispute coverage under this policy, the Company may reserve its rights to pay the claim and the costs of defense and seek reimbursement from the Insured for all amounts paid for which there was no coverage.

6. **DUTY OF INSURED CLAIMANT TO COOPERATE.**
(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title, the lien of the Insured

Mortgage, or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.
(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.
(c) If the Insured demands that the Company accept a settlement offer that is not greater than the Amount of Insurance or if the Insured expressly agrees that a settlement offer should be accepted, the Company has a right to be reimbursed if it has timely asserted its reservation of rights and notified the Insured that it intends to seek reimbursement if it pays to settle or defend a claim that is not covered by the policy.

7. **OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.**
In case of a claim under this policy, the Company shall have the following additional options:
(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.
(i) to pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay; or
(ii) to purchase the Indebtedness for the amount of the Indebtedness on the date of purchase, together with any costs, attorneys' fees and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of purchase and that the Company is obligated to pay.
When the Company purchases the Indebtedness, the Insured shall transfer, assign, and convey to the Company the Indebtedness and the Insured Mortgage, together with any collateral security.
Upon the exercise by the Company of either of the options provided for in subsections (a)(i) or (ii), all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in those subsections, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.
(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.
(i) to pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or
(ii) to pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.
Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

D-00159

8. **DETERMINATION AND EXTENT OF LIABILITY.**
This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.
(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the least of:
  (i) the Amount of Insurance;
  (ii) the Indebtedness;
  (iii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy; or
  (iv) If a government agency or instrumentality is the Insured Claimant, the amount it paid in the acquisition of the Title or the Insured Mortgage in satisfaction of its insurance contract or guaranty.
(b) If the Company pursues its rights under Section 3 or 5 and is unsuccessful in establishing the Title or the lien of the Insured Mortgage, as insured,
  (i) the Amount of Insurance shall be increased by 10%, and
  (ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.
(c) In the event the Insured has acquired the Title in the manner described in Section 2 of these Conditions or has conveyed the Title, then the extent of liability of the Company shall continue as set forth in Section 8(a) of these Conditions.
(d) In addition to the extent of liability under (a), (b) and (c), the Company will also pay those costs, attorneys' fees and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

9. **LIMITATION OF LIABILITY.**
(a) If the Company establishes the Title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the Land, or establishes the lien of the Insured Mortgage, all as insured, or takes action in accordance with Section 3 or 7, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.
(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title or to the lien of the Insured Mortgage, as insured.
(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

10. **REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.**
(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the Amount of Insurance by the amount of the payment. However, any payments made prior to the acquisition of Title as provided in Section 2 of these Conditions shall not reduce the Amount of Insurance afforded under this policy except to the extent that the payments reduce the Indebtedness.
(b) The voluntary satisfaction or release of the Insured Mortgage shall terminate all liability of the Company except as provided in Section 2 of these Conditions.

11. **PAYMENT OF LOSS.**
When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

12. **RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT.**
(a) The Company's Right to Recover.
Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title or Insured Mortgage and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.
(b) The Insured's Rights and Limitations.
  (i) The owner of the Indebtedness may release or substitute the personal liability of any debtor or guarantor, extend or otherwise modify the terms of payment, release a portion of the Title from the lien of the Insured Mortgage, or release any collateral security for the Indebtedness, if it does not affect the enforceability or priority of the lien of the Insured Mortgage.
  (ii) If the Insured exercises a right provided in (b)(i), but has Knowledge of any claim adverse to the Title or the lien of the Insured Mortgage insured against by this policy, the Company shall be required to pay only that part of any losses insured against by this policy that shall exceed the amount, if any, lost to the Company by reason of the impairment by the Insured Claimant of the Company's right of subrogation.
(c) The Company's Rights Against Non-insured Obligors.
The Company's right of subrogation includes the Insured's rights against non-insured obligors including the rights of the Insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights. The Company's right of subrogation shall not be avoided by acquisition of the Insured Mortgage by an obligor (except an obligor described in Section 1(e)(i)(F) of these Conditions) who acquires the Insured Mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an Insured under this policy.

13. **ARBITRATION.**
Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured, unless the Insured is an individual person (as distinguished from an Entity). All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

14. **LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.**
(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.
(b) Any claim of loss or damage that arises out of the status of the Title or lien of the Insured Mortgage or by any action asserting such claim, shall be restricted to this policy.
(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.
(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance. Each Commitment, endorsement or other form, or provision in the Schedules to this policy that refers to a term defined in Section 1 of the Conditions shall be deemed to refer to the term regardless of whether the term is capitalized in the Commitment, endorsement or other form, or Schedule. Each Commitment, endorsement or other form, or provision in the Schedules that refers to the Conditions and Stipulations shall be deemed to refer to the Conditions of this policy.

15. **SEVERABILITY.**
In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid and all other provisions shall remain in full force and effect.

D-00160

**16. CHOICE OF LAW; FORUM.**

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies or enforcement of policies of title insurance of the jurisdiction where the Land is located. Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title or the lien of the Insured Mortgage that are adverse to the Insured, and in interpreting and enforcing the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of laws principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

**17. NOTICES, WHERE SENT.**

Any notice of claim and any other notice or statement in writing required to be given the Company under this Policy must be given to the Company at P.O. Box 2029, Houston, TX 77252-2029.

-stewart*
·--·-- title guaranty company

D-00161

# Schedule A

File No.: **0903012**

Policy No.: **M-5952-000007292**

Loan No.:

Amount of Insurance: **$900,000.00**

Premium: **$125.00**

Date of Policy: **September 8, 2009**

1. Name of Insured:

   D'Hanis State Bank, and each successor in ownership of the indebtedness secured by the insured mortgage, except a successor who is an obligor under the provisions of Section 12(C) of the Conditions and Stipulations.

2. The estate or interest in the Land that is encumbered by the Insured Mortgage is:

   Fee Simple.

3. Title is insured as vested in:

   S A Eden Roc Apartments, LLC

4. The Insured Mortgage, and its assignments, if any, are described as follows:

   Vendor's lien retained in deed dated September 4, 2009, executed by The Raul S. Cantu Family Limited Partnership No. 2 a/k/a The Raul S. Cantu No. 2 Family Limited Partnership, a Texas limited partnership to S A Eden Roc Apartments, LLC, a Texas Limited Liability Company, securing payment of one note in the principal amount of $900,000.00, payable to D'Hanis State Bank, said note additionally secured by deed of trust to Laurie Mayfield, Trustee, said deed of trust filed for record on September 8, 2009, under Bexar County Clerk's File No. 20090176216.

5. The Land referred to in this policy is described as follows:

   A 0.916 of an acre, or 39,903 square feet, more or less, tract of land, being all of Lot 7, Block 13, New City Block 10060, EAST SHEARER HILLS ADDITION, situated in the City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 4500, Page 229, Deed and Plat Records of Bexar County, Texas. Said 0.916 of an acre being more particularly described by metes and bounds in Exhibit "A" attached hereto and made a part hereof for all intents and purposes.

D-00162

6. This policy incorporates by reference those endorsements selected below:

☐ T-5 (Leasehold Mortgagee Policy Endorsement)
☐ T-17 (Planned Unit Development) The following subparagraph(s) of this endorsement are deleted: _____
☐ T-19 (Restrictions, Encroachments, Minerals) The following subparagraph(s) of this endorsement are deleted: _____
☐ T-28 (Condominium) The following subparagraph(s) of this endorsement are deleted:

_____
☐ T-33 (Variable Rate)
☐ T-33.1 (Variable Rate—Negative Amortization)
☐ T-35 (Revolving Credit/Future Advance)
☐ T-36 (Environmental Protection Lien) Paragraph b refers to the following state statute(s): TEX. HEALTH & SAFETY CODE §361.194; TEX. HEALTH & SAFETY CODE §§342.007, 342.008; TEX. LOCAL GOV'T CODE §§214.0015(b), (d), AND (e), 214.001; TEX. NAT. RES. CODE §134.150, if applicable
☐ T-39 (Balloon Mortgage)
☐ T-42 (Equity Loan Mortgage) and subparagraph 2 (f) of the Equity Loan Mortgage Endorsement set forth in Procedural Rule P-44.C(2) ☐ is ☐ is not added. The following subparagraph(s) of this endorsement are deleted: _____
☐ T-42.1 (Supplemental Coverage Equity Loan Mortgage) The following subparagraph(s) of this endorsement are deleted: _____
☐ T-43 (Texas Reverse Mortgage) The following subparagraph(s) of this endorsement are deleted: _____
☒ Section 13 of the Conditions of this policy, which relates to Arbitration, is hereby deleted.

SERVICE TITLE COMPANY

_____

D-00163


FIELD NOTES
FOR

A 0.916 of an acre, or 39,903 square feet more or less, tract of land being all of Lot 7, Block 13, New City Block (N.C.B.) 10060 of the East Shearer Hills Subdivision in the City of San Antonio, Bexar County, Texas recorded in Volume 4500, Page 229 of the Deed and Plat Records of Bexar County, Texas. Said 0.916 of an acre tract being more fully described as follows with bearings being based on the North American Datum of 1983 (CORS 1996), from the Texas Coordinate System established for the South Central Zone:

BEGINNING:  At a found ½" iron rod, on the south right-of-way line of Dot Drive, the northeast corner of Lot 7, the northwest corner of Lot 8 of East Shearer Hills Subdivision;

THENCE:  S 36°46'25" W, departing the south right-of-way line of Dot Drive, along and with the east line of Lot 7 and the west line of Lot 8, a distance of 200.00 feet to a set ½" iron rod with yellow cap marked "Pape-Dawson", the southeast corner of Lot 7, the southwest corner of Lot 8, the north right-of-way line of Jackson-Kelller Road, a 60-foot right-of-way, from which a found ½" iron rod bears N 04°22'20" E, 0.52 feet;

THENCE:  N 53°13'35" W, along and with the south line of Lot 7 and the south right-of-way line of Jackson-Kelller Road, a distance of 185.00 feet to a set ½" iron rod with yellow cap marked "Pape-Dawson", the southwest corner of Lot 7, the south end of the northeast cutback of Jackson-Kelller Road and the east right-of-way line of Aribe Drive, a 60-foot right-of-way, from which a found ½" iron rod bears S 81°56'59" E, 0.92 feet;

THENCE:  Northwesterly, along and with the east right-of-way line of Aribe Drive, along a tangent curve to the right said curve having radius of 15.00 feet, a central angle of 90°00'00", a chord bearing and distance of N 08°13'35" W, 21.21 feet, an arc length of 23.56 feet to a set ½" iron rod with yellow cap marked "Pape-Dawson", from which a found ½" iron rod bears N 64°37'24" W, 1.05 feet;

THENCE:  N 36°46'25" E, along and with the east right-of-way line of Aribe Drive, a distance of 170.00 feet to a set ½" iron rod with yellow cap marked "Pape-Dawson", the south end of the southeast cutback of Aribe Drive and south right-of-way lien of Dot Drive, from which a found ½" iron rod bears N 59°29'02" W, 0.57 feet;

THENCE:    Northeasterly, along and with the south right-of-way line of Dot Drive, along a tangent curve to the right said curve having radius of 15.00 feet, a central angle of 90°00'00", a chord bearing and distance of N 81°46'25" E, 21.21 feet, an arc length of 23.56 feet to a set ½" iron rod with yellow cap marked "Pape-Dawson", the northwest corner of Lot 7, from which a found ½" iron rod bears N 15°43'02" E, 0.92 feet;

THENCE:    S 53°13'35" E, along and with the south right-of-way line of Dot Drive, a distance of 185.00 feet to the POINT OF BEGINNING, and containing 0.916 of an acre in the City of San Antonio, Bexar County, Texas, Said tract being described in accordance with a survey made on the ground and an exhibit prepared by Pape-Dawson Engineers, Inc.

PREPARED BY:    Pape-Dawson Engineers, Inc.
JOB No.:    9055-09
DATE:    March 17, 2009
DOC. ID.:    N:\Survey09\9-9100\9055-09\9055-09FN.doc



**PAPE-DAWSON
ENGINEERS**

D-00165

LOAN POLICY
SCHEDULE B
EXCEPTIONS FROM COVERAGE

File No.: **0903012**                          Policy No.: **M-5952-000007292**

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of the terms and conditions of the leases and easements, if any, shown in Schedule A, and the following matters:

1. The following restrictive covenants of record itemized below, but the Company insures that any such restrictive covenants have not been violated so as to affect, and that future violation thereof will not affect, the validity or priority of the Insured Mortgage (insert specific recording data or delete this exception):

   Volume 2589, Page 147, Deed Records of Bexar County, Texas, deleting any unlawful discriminatory provisions based on race, color, religion, sex, handicap, familial status or national origin.

2. Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments, or protrusions, or any overlapping of improvements.

3. Standby fees, taxes and assessments by any taxing authority for the year 2009, and subsequent years, but not those taxes or assessments for prior years because of an exemption granted to a previous owner of the property under Section 11.13, Texas Tax Code, or because of improvements not assessed for a previous tax year.

   _x_ Item 3 of Schedule B is hereby amended to add the following: "Company insures that standby fees, taxes and assessments by any taxing authority for the year 2009 are not yet due and payable."

4. Liens and leases that affect the title to the estate or interest, but that are subordinate to the lien of the Insured Mortgage.

5. (Insert here all other specific exceptions as to superior liens, easements, outstanding mineral and royalty interests, etc.)

   a. 25 foot front building setback line as set forth in Volume 2589, Page 147, Deed Records of Bexar County, Texas.

   b. Easement as set out in Volume 2625, Page 183, Deed Records of Bexar County, Texas.

   c. Cable TV Easement recorded in Volume 5008, Page 71, Real Property Records of Bexar County, Texas.

Schedule B - Page 1 of 2

D-00166

d. The following matters disclosed on survey dated March 2009, by PAPE-DAWSON ENGINEERS, Job No. 9055-09, including, but not limited to:

    i)      Encroachment of three 2 story brick buildings upon 25 foot front building setback line along Jackson-Keller Road

    ii)     Wood fence inset at northeast corner of lot along Dot Drive

e. Rights to oil, gas and other minerals of every kind and character in, on and under the property described in Schedule A, together with the rights, privileges and immunities relating thereto.

f. Any and all liens arising by reason of unpaid bills or claims for work performed or materials furnished in connection with improvements placed, or to be placed, upon the subject land. However, the Company does insure the Insured against loss, if any, sustained by the Insured under this Policy if such liens have been filed with the County Clerk of Bexar County, Texas, prior to the date hereof.

g. Pending disbursement of the full proceeds of the loan secured by the lien instrument set forth under Schedule A hereof, this policy insures only to the extent of the amount actually disbursed, but increases as each disbursement is made in good faith and without knowledge of any defects in, or objections to, the title up to the face amount of the policy. Nothing contained in this paragraph shall be construed as limiting any exception under Schedule B, or any printed provision of the policy.

h. Any and all unrecorded leases and rights of parties therein.

D-00167



## IMPORTANT NOTICE

To obtain information or make a complaint:

1. You may contact your title insurance agent at (telephone number)

2. You may call Stewart Title Guaranty Company's toll-free telephone number for information or to make a complaint at:

### (800) 729-1900

3. You may also write to Stewart Title Guaranty Company at P. O. Box 2029, Houston, TX 77252-2029

4. You may contact the Texas Department of Insurance to obtain information on companies, rights or complaints at:

### 1-800-252-3439

5. You may write the Texas Department of Insurance:
P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 475-1771
Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

## PREMIUM OR CLAIM DISPUTES:

Should you have a dispute concerning your premium or about a claim you should contact the title insurance agent first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

## ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

## AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

1. Puede comunicarse con su agente de seguro de titulo al (telephone number).

2. Usted puede llamar al numero de telefono gratis de Stewart Title Guaranty Company para informacion o para someter una queja al:

### (800) 729-1900

3. Usted tambien puede escribir a Stewart Title Guaranty Company, P. O. Box 2029, Houston, TX 77252-2029

4. Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

### 1-800-252-3439

5. Puede escribir al Departamento de Seguros de Texas:
P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 475-1771
Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

## DISPUTAS SOBRE PRIMAS O RECLAMOS:

Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente de seguro de titulo primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

## UNA ESTE AVISO A SU POLIZA:

Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

# Appendix H

## LOAN POLICY OF TITLE INSURANCE (Form T-2)
### Issued by

## Blank Title Insurance Company

**Any notice of claim and any other notice or statement in writing required to be given the Company under this Policy must be given to the Company at the address shown in Section 17 of the Conditions.**

### COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS, BLANK TITLE INSURANCE COMPANY, a Blank corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 11, 13 and 14, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.

2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from:

    (a) A defect in the Title caused by:

        (i) forgery, fraud, undue influence, duress, incompetency, incapacity or impersonation;

        (ii) failure of any person or Entity to have authorized a transfer or conveyance;

        (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized or delivered;

        (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;

        (v) a document executed under a falsified, expired or otherwise invalid power of attorney;

        (vi) a document not properly filed, recorded or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or

        (vii) a defective judicial or administrative proceeding.

    (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.

    (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.

3. Lack of good and indefeasible Title.

4. No right of access to and from the Land.

5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting or relating to:

> (a) the occupancy, use or enjoyment of the Land;

> (b) the character, dimensions or location of any improvement erected on the Land;

> (c) subdivision of land; or

> (d) environmental protection

if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.

7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.

8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.

9. The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title. This Covered Risk includes but is not limited to insurance against loss from any of the following impairing the lien of the Insured Mortgage:

> (a) forgery, fraud, undue influence, duress, incompetency, incapacity or impersonation;

> (b) failure of any person or Entity to have authorized a transfer or conveyance;

> (c) the Insured Mortgage not being properly created, executed, witnessed, sealed, acknowledged, notarized or delivered;

> (d) failure to perform those acts necessary to create a document by electronic means authorized by law;

> (e) a document executed under a falsified, expired or otherwise invalid power of attorney;

> (f) a document not properly filed, recorded or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or

> (g) a defective judicial or administrative proceeding.

10. The lack of priority of the lien of the Insured Mortgage over any other lien or encumbrance.

11. The lack of priority of the lien of the Insured Mortgage

> (a) as security for each and every advance of proceeds of the loan secured by the Insured Mortgage over any statutory or constitutional mechanic's, contractor's, or materialman's lien for services, labor or material having its inception on or before Date of Policy ; and

> (b) over the lien of any assessments for street improvements under construction or completed at Date of Policy.

12. The invalidity or unenforceability of any assignment of the Insured Mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the Insured Mortgage in the named Insured assignee free and clear of all liens.

13. The invalidity, unenforceability, lack of priority or avoidance of the lien of the Insured Mortgage:

(a) resulting from the avoidance in whole or in part, or from a court order providing an alternative remedy, of any transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction creating the lien of the Insured Mortgage because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency or similar creditors' rights laws; or

(b) because the Insured Mortgage constitutes a preferential transfer under federal bankruptcy, state insolvency or similar creditors' rights laws by reason of the failure of its recording in the Public Records:
    (i) to be timely, or
    (ii) to impart notice of its existence to a purchaser for value or a judgment or lien creditor.

14. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 13 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the Insured Mortgage in the Public Records.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

[Witness clause optional]

**BLANK TITLE INSURANCE COMPANY**

By _____
President

By _____
Secretary

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses that arise by reason of:

1.    (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting or relating to:

(i) the occupancy, use, or enjoyment of the Land;

(ii) the character, dimensions or location of any improvement erected on the Land;

(iii) subdivision of land; or

(iv) environmental protection;

or the effect of any violation of these laws, ordinances or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

(b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims or other matters:

(a) created, suffered, assumed or agreed to by the Insured Claimant;

(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

(c) resulting in no loss or damage to the Insured Claimant;

(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14); or

(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing business laws of the state where the Land is situated.

5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is:

(a) a fraudulent conveyance or fraudulent transfer; or

(b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

8. The refusal of any person to purchase, lease or lend money on the estate or interest covered hereby in the land described in Schedule A because of Unmarketable Title.

## SCHEDULE A

Name and Address of Title Insurance Company:
[File No.: ] Policy No.:
Loan No.:
[Address for Reference only:]
Amount of Insurance: $ [Premium: $ ]
Date of Policy: [at a.m./p.m.]

1.  Name of Insured:

2. The estate or interest in the Land that is encumbered by the Insured Mortgage is:

3. Title is insured as vested in:

4. The Insured Mortgage, and its assignments, if any, are described as follows:

5. The Land referred to in this policy is described as follows:

6. This policy incorporates by reference those endorsements selected below:

☐T-5 (Leasehold Loan Policy Endorsement)
☐T-17 (Planned Unit Development)
☐T-19 (Restrictions, Encroachments, Minerals)
☐T-19.2 (Minerals and Surface Damage)
☐T-19.3 (Minerals and Surface Damage)
☐T-28 (Condominium)
☐T-31 (Manufactured Housing) referring to manufactured housing unit serial number _____
☐T-31.1 (Supplemental Coverage Manufactured Housing Unit)
☐T-33 (Variable Rate)
☐T-33.1 (Variable Rate--Negative Amortization)
☐T-35 (Revolving Credit/Future Advance)
☐T-36 (Environmental Protection Lien) Paragraph b refers to the following state statute(s):
☐T-39 (Balloon Mortgage)
☐T-42 (Equity Loan Mortgage) and subparagraph 2(f) of the Equity Loan Mortgage Endorsement set forth in Procedural Rule P-44.C(2) __ is ___ is not added.
☐T-42.1 (Supplemental Coverage Equity Loan Mortgage)
☐T-43 (Texas Reverse Mortgage)
☐Section 13 of the Conditions of this policy, which relates to Arbitration, is hereby deleted.

[The Company may insert or preprint all or part of paragraph 6 as applicable and may delete boxes or substitute lines for boxes. The Company also may substitute the following at the beginning of paragraph 6: "This policy incorporates by reference those endorsements shown below:"]

## SCHEDULE B

File No.                                                                 Policy No.

**EXCEPTIONS FROM COVERAGE**

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of the terms and conditions of leases and easements, if any, shown in Schedule A, and the following matters:

1. The following restrictive covenants of record itemized below, but the Company insures that any such restrictive covenants have not been violated so as to affect, and that future violation thereof will not affect, the validity or priority of the Insured Mortgage (insert specific recording data or delete this exception):

2. Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or protrusions, or any overlapping of improvements.

☐　　　Item 2 of Schedule B is hereby amended to read: "shortages in area".

3. Standby fees, taxes and assessments by any taxing authority for the year ___, and subsequent years; and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership, but not those taxes or assessments for prior years because of an exemption granted to a previous owner of the property under Section 11.13, Texas Tax Code, or because of improvements not assessed for a previous tax year.

☐　　　Item 3 of Schedule B is hereby amended to delete: "and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership,"

☐　　　Item 3 of Schedule B is hereby amended to add the following: "Company insures that standby fees, taxes and assessments by any taxing authority for the year ____ are not yet due and payable."

4. Liens and leases that affect the Title, but that are subordinate to the lien of the Insured Mortgage.

5. (Insert here all other specific exceptions as to superior liens, easements, outstanding mineral and royalty interests, etc.)

[The Company may substitute lines for boxes or delete the boxes and incorporate any applicable change to the exception above in the exception.]

## CONDITIONS
## 1. DEFINITION OF TERMS.

(a) "Amount of Insurance": the amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Section 10 of these Conditions.

(b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.

(c) "Entity": A corporation, partnership, trust, limited liability company or other similar legal entity.

(d) "Indebtedness": The obligation secured by the Insured Mortgage including one evidenced by electronic means authorized by law, and if that obligation is the payment of a debt, the Indebtedness is the sum of:

(i) the amount of the principal disbursed as of Date of Policy;

(ii) the amount of the principal disbursed subsequent to Date of Policy;

(iii) construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the Land or related to the Land that the Insured was and continued to be obligated to advance at Date of Policy and at the date of the advance;

(iv) interest on the loan;

(v) prepayment premiums, exit fees and other similar fees or penalties allowed by law;

(vi) expenses of foreclosure and any other costs of enforcement;

(vii) amounts advanced to assure compliance with laws or to protect the lien or the priority of the lien of the Insured Mortgage before the acquisition of the estate or interest in the Title;

(viii) amounts to pay taxes and insurance; and,

(ix) reasonable amounts expended to prevent deterioration of improvements; but reduced by the total of all payments and by any amount forgiven by an Insured.

(e) "Insured": the Insured named in Schedule A.

(i) The term "Insured" also includes:

(A) the owner of the Indebtedness and each successor in ownership of the Indebtedness, whether the owner or successor owns the Indebtedness for its own account or as a trustee or other fiduciary, except a successor who is an obligor under the provisions of Section 12(c) of these Conditions;

(B) if the Indebtedness is evidenced by a "transferable record," the person or Entity who has "control" of the "transferable record," as these terms are defined by applicable electronic transactions law;

(C) successors to an Insured by dissolution, merger, consolidation, distribution or reorganization;

(D) successors to an Insured by its conversion to another kind of Entity;

(E) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title:

(1) If the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,

(2) If the grantee wholly owns the named Insured, or

(3) If the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity;

(F) any government agency or instrumentality that is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the Indebtedness secured by the Insured Mortgage, or any part of it, whether named as an Insured or not;

(ii) With regard to (A), (B), (C), (D) and (E) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured, unless the successor acquired the Indebtedness as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance or other matter insured against by this policy.

(f) "Insured Claimant": an Insured claiming loss or damage.

(g) "Insured Mortgage": the Mortgage described in paragraph 4 of Schedule A.

(h) "Knowledge" or "Known": actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(i) "Land": the land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines

of the area described in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(j) "Mortgage": mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(k) "Public Records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(l) "Title": the estate or interest described in Schedule A.

(m) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title or a prospective purchaser of the Insured Mortgage to be released from the obligation to purchase, lease or lend if there is a contractual condition requiring the delivery of marketable title.

## 2. CONTINUATION OF INSURANCE.

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured after acquisition of the Title by an Insured or after conveyance by an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

## 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) below, or (ii) in case Knowledge shall come to an Insured of any claim of title or interest that is adverse to the Title or the lien of the Insured Mortgage, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

Subject to the provisions of this policy, upon acquisition of all or any part of the Title pursuant to the provisions of Section 2 of these Conditions, when, after the Date of the Policy, the Insured notifies the Company as required herein of a lien, encumbrance, adverse claim or other defect in Title insured by this policy that is not excluded or excepted from the coverage of this policy, the Company shall promptly investigate the charge to determine whether the lien, encumbrance, adverse claim or defect or other matter is valid and not barred by law or statute. The Company shall notify the Insured in writing, within a reasonable time, of its determination as to the validity or invalidity of the Insured's claim or charge under the policy. If the Company concludes that the lien, encumbrance, adverse claim or defect is not covered by this policy, or was otherwise addressed in the closing of the transaction in connection with which this policy was issued, the Company shall specifically advise the Insured of the reasons for its determination. If the Company concludes that the lien, encumbrance, adverse claim or defect

is valid, the Company shall take one of the following actions: (i) institute the necessary proceedings to clear the lien, encumbrance, adverse claim or defect from the Title as insured; (ii) indemnify the Insured as provided in this policy; (iii) upon payment of appropriate premium and charges therefor, issue to the Insured Claimant or to a subsequent owner, mortgagee or holder of the estate or interest in the Land insured by this policy, a policy of title insurance without exception for the lien, encumbrance, adverse claim or defect, said policy to be in an amount equal to the current value of the Land or, if a loan policy, the amount of the loan; (iv) indemnify another title insurance company in connection with its issuance of a policy(ies) of title insurance without exception for the lien, encumbrance, adverse claim or defect; (v) secure a release or other document discharging the lien, encumbrance, adverse claim or defect; or (vi) undertake a combination of (i) through (v) herein.

## 4. PROOF OF LOSS.

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

## 5. DEFENSE AND PROSECUTION OF ACTIONS.

(a) Upon written request by the Insured, and subject to the options contained in Sections 3 and 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b) The Company shall have the right, in addition to the options contained in Sections 3 and 7, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title or the lien of the Insured Mortgage, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction and it expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

## 6. DUTY OF INSURED CLAIMANT TO COOPERATE.

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including

the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title, the lien of the Insured Mortgage, or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

## 7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.
(i) to pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay; or

(ii) to purchase the Indebtedness for the amount of the Indebtedness on the date of purchase, together with any costs, attorneys' fees and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of purchase and that the Company is obligated to pay.

When the Company purchases the Indebtedness, the Insured shall transfer, assign, and convey to the Company the Indebtedness and the Insured Mortgage, together with any collateral security.

Upon the exercise by the Company of either of the options provided for in subsections (a)(i) or (ii), all liability and obligations of the Company to the Insured under this policy,

other than to make the payment required in those subsections, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.

(i) to pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) to pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

## 8. DETERMINATION AND EXTENT OF LIABILITY.

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the least of:

(i) the Amount of Insurance;

(ii) the Indebtedness;

(iii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy; or

(iv) if a government agency or instrumentality is the Insured Claimant, the amount it paid in the acquisition of the Title or the Insured Mortgage in satisfaction of its insurance contract or guaranty.

(b) If the Company pursues its rights under Section 3 or 5 and is unsuccessful in establishing the Title or the lien of the Insured Mortgage, as insured,

(i) the Amount of Insurance shall be increased by 10%, and

(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In the event the Insured has acquired the Title in the manner described in Section 2 of these Conditions or has conveyed the Title, then the extent of liability of the Company shall continue as set forth in Section 8(a) of these Conditions.

(d) In addition to the extent of liability under (a), (b) and (c), the Company will also pay those costs, attorneys' fees and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

## 9. LIMITATION OF LIABILITY.

(a) If the Company establishes the Title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the Land, or establishes the lien of the Insured Mortgage, all as insured, or takes action in accordance with Section 3 or 7, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title or to the lien of the Insured Mortgage, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

## 10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the Amount of Insurance by the amount of the payment. However, any payments made prior to the acquisition of Title as provided in Section 2 of these Conditions shall not reduce the Amount of Insurance afforded under this policy except to the extent that the payments reduce the Indebtedness.

(b) The voluntary satisfaction or release of the Insured Mortgage shall terminate all liability of the Company except as provided in Section 2 of these Conditions.

## 11. PAYMENT OF LOSS.

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

## 12. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT.

(a) The Company's Right to Recover.

Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title or Insured Mortgage and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Insured's Rights and Limitations.

> (i) The owner of the Indebtedness may release or substitute the personal liability of any debtor or guarantor, extend or otherwise modify the terms of payment, release a portion of the Title from the lien of the Insured Mortgage, or release any collateral security for

the Indebtedness, if it does not affect the enforceability or priority of the lien of the Insured Mortgage.

(ii) If the Insured exercises a right provided in (b)(i), but has Knowledge of any claim adverse to the Title or the lien of the Insured Mortgage insured against by this policy, the Company shall be required to pay only that part of any losses insured against by this policy that shall exceed the amount, if any, lost to the Company by reason of the impairment by the Insured Claimant of the Company's right of subrogation.

(c) The Company's Rights Against Non-insured Obligors.

The Company's right of subrogation includes the Insured's rights against non-insured obligors including the rights of the Insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights. The Company's right of subrogation shall not be avoided by acquisition of the Insured Mortgage by an obligor (except an obligor described in Section 1(e)(i)(F) of these Conditions) who acquires the Insured Mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an Insured under this policy.

## 13. ARBITRATION.

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured, unless the Insured is an individual person (as distinguished from an Entity). All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

## 14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or lien of the Insured Mortgage or by any action asserting such claim, shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance. Each Commitment, endorsement or other form, or provision in the Schedules to this policy that refers to a term defined in Section 1 of the Conditions shall be deemed to refer to the term regardless of whether the term is capitalized in the Commitment, endorsement or other form, or Schedule.

Each Commitment, endorsement or other form, or provision in the Schedules that refers to the Conditions and Stipulations shall be deemed to refer to the Conditions of this policy.

## 15. SEVERABILITY.

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid and all other provisions shall remain in full force and effect.

## 16. CHOICE OF LAW; FORUM.

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title or the lien of the Insured Mortgage that are adverse to the Insured, and in interpreting and enforcing the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of laws principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

## 17. NOTICES, WHERE SENT. Any notice of claim and any other notice or statement in writing required to be given the Company under this Policy must be given to the Company at [fill in].

NOTE: Bracketed [ ] material optional
(Form T-2: Loan Policy of Title Insurance)

# Appendix I

Cause No. 2013-CI-14899

| | | |
|---|---|---|
| VANTAGE BANK TEXAS, SUCCESSOR<br>BY MERGER TO D'HANIS STATE BANK,<br>and BANPROP, L. L. C., | §<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | 150TH JUDICIAL DISTRICT |
| STEWART TITLE GUARANTY COMPANY, | §<br>§<br>§ | |
| Defendant. | § | BEXAR COUNTY, TX |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S
## SECOND MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiff Vantage Bank Texas, successor by merger to D'Hanis State Bank, individually

and as agent for Banprop, L.L.C. ("Bank"), submits this response to the second motion for

summary judgment filed by defendant Stewart Title Guaranty Company ("Stewart Title").

### SUMMARY JUDGMENT EVIDENCE

The Bank relies on the following evidence in support of its response to Stewart Title's

second motion for summary judgment.

Loan Policy of Title Insurance ................................................................................ Tab A

Notice of Hearing (January Notice) ......................................................................... Tab B

Notice of Hearing (February Notice) ........................................................................ Tab C

Business Records Affidavit and
Dangerous Structure Determination Board Demolition Order ................................. Tab D

Commercial Contract—Improved Property .............................................................. Tab E

Promissory Note ....................................................................................................... Tab F

Affidavit of Geoff Hall ............................................................................................. Tab G

Affidavit of David B. West........................................................................................ Tab H

Excerpts of Deposition of Rainey Bingham ........................................................... Tab I

## BACKGROUND

This case involves a dispute over coverage under a title insurance policy issued by Stewart Title Guaranty Company ("Stewart") to D'Hanis State Bank ("D'Hanis"). D'Hanis made a $900,000 loan in September 2009 to SA Eden Roc Apartments, L.L.C. ("Eden Roc") to enable Eden Roc to purchase and renovate certain property ("Property"), which included a number of apartment buildings ("Improvements"). *Tab F* at p. 1-2.

In early 2008, the City of San Antonio issued notice of a January 2008 hearing concerning the proposed demolition of the Improvements on the Property ("January Notice"). *Tab B.* The January Notice was filed and recorded in the official public records of Bexar County, Texas. *Id.* A second notice ("February Notice") was filed in the Real Property Records of Bexar County with the correct legal description, but the wrong owner's name. *Tab C.*

After the City found the property to be a public nuisance and issued a demolition order, but before judicial review of that order was completed,[1] the Property was sold to Eden Roc. *Tabs D, E.* On September 4, 2009, Eden Roc closed on the purchase of the Property and D'Hanis made its loan.[2] *Tabs F, G.* Four days later, Stewart Title issued a $900,000 Loan Policy of Title Insurance ("Policy") to D'Hanis, covering the Property. *Tab A.* The Policy

---

[1] The judicial review proceeding was later dismissed because the Property was sold. *See City of San Antonio v. D'Hanis State Bank*, No. 04-10-00181-CV, 2010 WL 3249956, *1 (Tex. App.—San Antonio Aug. 18, 2010, no pet.).

[2] Stewart Title disingenuously asserts that the Bank was aware, before it made the Loan, that the City was attempting to demolish the Improvements. *See Stewart Second MSJ* at 5-6. It bases this assertion on handwritten notations in contracts between the buyer and seller of the Property that "Buyer is aware of the issue with the city" and "Buyer has satisfied self that it can attain all necessary permits from City of San Antonio in order to rehab property." *Id.* But Stewart Title is well aware that the notations concern the planned renovations to the Property, not any attempt to demolish the Improvements. Rainey Bingham, the loan officer for the Bank, testified that the "issue with the City" referred to whether or not the City would issue building permits to do the rehabilitation. *Tab I* at 32-34

2

issued by Stewart Title did not include an exception to coverage for demolition of the Improvements. *Id.*

While the City initially issued building permits for renovations to the Improvements, it later revoked those permits because another department of the City was still seeking to demolish the Improvements. *Tab G.* As a result of the City's efforts to enforce its nuisance ordinances and to demolish the Improvements, D'Hanis made a claim on the Policy. *Id.* Stewart Title denied coverage. *Id.* D'Hanis then filed suit against the City to prevent demolition of the Improvements (at least temporarily), and the court of appeals ultimately held that D'Hanis was not bound by the January Notice. *City of San Antonio v. D'Hanis State Bank*, No. 04-10-00181-CV, 2010 WL 3249956, *3 (Tex. App.—San Antonio Aug. 18, 2010, no pet.). Undaunted, the City renewed its enforcement efforts and the Improvements were demolished in 2012. *Tab G.*

The Bank filed suit against Stewart Title for breach of the Policy. The parties filed competing motions for summary judgment on the issue of coverage. Neither party alleged that any genuine issues of material fact exist on the issue of coverage. Even so, both motions were denied. But, as demonstrated in the Bank's second motion for summary judgment, there is no fact question relating to coverage for a jury to resolve. Coverage is established as a matter of law and Stewart Title's arguments attempting to negate coverage are negated as a matter of law.

## SUMMARY OF RESPONSE POINTS

**I.    Response to the second motion for traditional summary judgment.**

Stewart Title has not conclusively established that coverage was not triggered under Covered Risks 5 and 6 for the following reasons: (1) the February Notice triggered coverage because it describes the property, the violation and the proposed enforcement, and was filed in the Official Public Records of Real Property of Bexar County, Texas; (2) the Policy does not require that notice be filed in the Official Public Records of Real Property.

3

Stewart Title has not conclusively established that the Bank's loss is excluded on the ground that the notice of hearing that finally resulted in demolition was not filed until after the Date of Policy. The Bank's loss resulted from defects or other matters that existed before the Date of Policy. Specifically, the loss resulted from the violation of a municipal nuisance ordinance occurring before the Date of Policy and enforcement of the ordinance began before that date. The fact that the actual demolition occurred after that date does not retroactively exclude the loss.

Stewart Title has not conclusively established that the Bank's loss is not covered based on the assertion that it affected only the value of the property and not its title. The cases on which Stewart Title relies for this proposition are distinguishable because they do not apply the specific coverage provisions here at issue. The Bank's loss is covered under Covered Risks 5 and 6, which were not at issue in the cases cited by Stewart Title.

Finally, Stewart Title has not conclusively established that the Bank is judicially estopped from asserting that either the January Notice or the February Notice is sufficient to trigger coverage. Stewart Title seeks to estop the Bank based on its position in prior litigation with the City. But that litigation concerned a different issue—whether the City complied with statutory requirements necessary to bind a successor lienholder to a notice of hearing. The statute, which governs only the municipality's actions, does not aid in determining whether the January Notice was properly filed for purposes of triggering coverage under the Policy. In addition, the Bank's litigation with the City did not concern the February Notice at all. The Bank is therefore not taking inconsistent positions and judicial estoppel does not apply.

## II.     Response to the second motion for no-evidence summary judgment.

Stewart Title's motion for no-evidence summary judgment should be denied because it does not comply with Rule 166a(i). Particularly, it does not specify what element of the Bank's

4

cause of action is not supported by evidence.

In the alternative, the motion should be denied because the Bank has produced evidence raising a genuine issue of material fact concerning Stewart Title's breach of the Policy by denying the Bank's claim, which is covered under Covered Risks 5 and/or 6 and is not excluded.

## RESPONSE TO TRADITIONAL SUMMARY JUDGMENT MOTION

### STANDARD FOR TRADITIONAL SUMMARY JUDGMENT

The party moving for a traditional summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972). The evidence favoring the non-movant is taken as true and every reasonable inference from the evidence will be indulged in his favor. *Nixon*, 690 S.W.2d at 548-49; *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex. 1984). Further, the non-movant bears no burden unless and until the movant meets its initial burden. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23 (Tex. 1999) (citing *Oram v. Gen. Am. Oil Co.*, 513 S.W.2d 533, 534 (Tex. 1974); *Swilley*, 488 S.W.2d at 67–68)).

### ARGUMENT AND AUTHORITIES

I.  **The February Notice satisfied all of the filing requirements stated in Covered Risks 5 and 6.**

    A.  **The Policy does not require that the notice be sent to the property owner at the correct address.**

The Bank asserts that its loss is covered under Covered Risks 5 and 6:

    5.    The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting or relating to:

(a)  the occupancy, use or enjoyment of the Land;

(b)  the character, dimensions or location of any improvement erected on the Land; . . . .

if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

6.  An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.

*Tab A* at 2, ¶¶ (5), (6).[3]

The plain language of Covered Risks 5 and 6 imposes only three requirements for notice: the notice must (1) describe any part of the Land; (2) be recorded in the Public Records; and (3) set forth the violation or intention to enforce. *Tab A* at 2, ¶¶ (5), (6).

Stewart Title's second summary judgment motion acknowledges that the City filed a notice of hearing on the demolition of the property here at issue (the February Notice) in the Official Public Records of Real Property of Bexar County. *Stewart Title Second MSJ* at 4-5. A comparison of the January Notice and the February Notice reveals that both contain the exact same legal property description: NCB 10060 BLK 13 LOT 7. *Compare Tab B with Tab C.* Both Notices also refer to the same violation and proposed enforcement:

The purpose of this hearing is to determine whether the above property constitutes a public nuisance in need of abatement. . . . If the property is determined to be a public nuisance, the Board may order remediation action up to and including demolition of the structure at the owner's expense.

*Id.*

---

[3] Stewart Title quotes Exclusions 1(a) and 3(a) and (b), apparently as somehow supporting an argument that notice must be filed in real property records. *See Stewart Second MSJ* at 10-11. But neither Exclusion 1(a) nor Exclusion 3(a) contains any notice filing requirement or mentions "Public Records." *See Tab A*, at 2 ¶¶ (1)(a), 3(a). Exclusion 3(b) excludes coverage for certain defects, liens, encumbrances, adverse claims or other matters "not recorded in the Public Records at Date of Policy," but does not specify that Public Records must be real property records. *Id.* at 2, ¶ 3(a)

6

The February Notice satisfies the filing requirements of Covered Risks 5 and 6. It undisputedly "describe[s] any part of the Land," describes the violation (public nuisance) and enforcement (demolition) that form the basis of the Bank's claim, and was recorded in the Official Public Records of Real Property of Bexar County. *See Tab A* at 2, ¶¶ (5), (6); *Tab C.*

Stewart Title contends that the February Notice does not trigger coverage, however, because that notice was not sent to the property owner at the correct address. *Stewart Title Second MSJ* at 11. But there is no language in the Policy requiring that notice be sent "to the property owner at the correct address." On the contrary, as noted, the *only* Policy requirements for notice are that it (1) describe any part of the Land; (2) be recorded in the Public Records; and (3) set forth the violation or intention to enforce.[4] *Tab A* at 2, ¶¶ (5), (6). The February Notice satisfies each of these requirements.

Stewart Title's own motion conclusively defeats its contention that a notice of hearing triggering coverage was never filed in the Official Public Records of Real Property of Bexar County. Its request for summary judgment on this ground should be denied.

**B.     The February Notice need only comply with the Policy, not with a statute regulating government action.**

Stewart Title's next attempt to avoid the effect of the February Notice is to ignore the Policy language and to turn instead to section 214.001 of the Texas Local Government Code. *Stewart Title Second MSJ* at 12. Stewart Title's reliance on section 214.001 fails because that statute does not apply in this case. This is not a dispute over whether a governmental entity complied with a statutory notice requirement. *See* TEX. LOC. GOV'T CODE § 214.001(e). This is purely a contract dispute between private parties and the only question presented is whether the

---

[4] There is also no requirement in the Policy that the notice be filed under the grantor's or grantee's name. Thus, Stewart Title's assertion that expert Rhonda Jolley agrees that the February Notice could not be found in the grantor/grantee index for Bexar County Real Property Records is of no consequence. *See Stewart Title Second MSJ* at 13.

7

February Notice *complied with the Policy language.*

Stewart Title's reliance on section 214.001 evidences a misinterpretation of the Policy's definition of "Public Records": "records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge." *Tab A* at 3 ¶ (1)(k). A plain, grammatical reading of that definition reveals that "established under state statutes . . . for the purpose of imparting constructive notice" refers to the type of records, not the content of any notice filed therein.

Stewart Title has vigorously argued throughout this litigation that "Public Records," as defined, can only mean "Official Public Records of Real Property." But even accepting this contention for the sake of argument establishes only *where* the notice must be filed. What the notice must *contain* is prescribed, not by statute, but by Covered Risks 5 and 6. As established above, the February Notice complies with every Policy requirement, including both where the notice must be filed and its mandatory contents.

In any event, section 214.001 actually disproves Stewart Title's contention that the February Notice did not impart constructive notice because it was not addressed to the correct property owner. Section 214.001(e) provides that filing a notice of hearing concerning a municipality's intent to have a substandard building demolished, as prescribed in that statute, provides constructive notice to subsequent interest holders:

> The filing of the notice is binding on subsequent grantees, lienholders, or other transferees of an interest in the property who acquire such interest after the filing of the notice, and constitutes notice of the hearing on any subsequent recipient of any interest in the property who acquires such interest after the filing of the notice.

TEX. LOCAL GOV'T CODE § 214.001(e).

The statute requires that the notice contain "a legal description of the affected property," but it does not require, in every instance, that it contain the property owner's name. *Id.* Rather, it

8

states that the notice must contain the owner's name "if that information can be determined." So, conversely, if the owner's name cannot be determined, it need not be included in the notice.

The statute obviously contemplates that a document filed in the real property records that contains a legal description of the affected property but does *not* contain the name of the property owner still imparts constructive notice. In this regard, the statute is completely compatible with the Policy language which, as just demonstrated, requires that notice describe some part of the land but does *not* require that it name the property owner. *See Tab A* at 2, ¶¶ (5), (6).

The February Notice was sufficient to impart constructive notice and to trigger coverage under the Policy. Stewart Title's request for summary judgment on the ground of lack of constructive notice should be denied.

## II. The January Notice satisfied all of the filing requirements stated in Covered Risks 5 and 6.

### A. Section 214.001(e) of the Texas Local Government Code governs the legality of a municipality's action, not coverage under the Policy.

As Stewart Title also acknowledges, the January Notice was filed in the Official Public Records of Bexar County. *Stewart Title Second MSJ* at 4. This notice, like the February Notice, describes part of the Land and sets forth the violation or intention to enforce. *See Tab* A at 2 ¶¶ (5), (6). Stewart Title's argument that the January Notice was insufficient to trigger coverage rests on its contention that "Public Records," as defined in the Policy, can only mean "Official Public Records *of Real Property* of Bexar County" rather than "Official Public Records of Bexar County." Stewart Title has not conclusively established any such narrow reading.

Stewart Title again relies on section 214.001 of the Texas Local Government Code, which provides that a municipality seeking to demolish a substandard building "may file notice of the hearing in the Official Public Records of Real Property in the county in which the property

9

is located." TEX. LOCAL GOV'T CODE § 214.001(e). But section 214.001(e) must be read in context.

Section 214.001, as a whole, governs a municipality's authority concerning substandard buildings. Subsection (d) outlines a procedure whereby, after a public hearing and a finding that the subject building violated a pertinent ordinance, the municipality may order the owner to demolish the building within a reasonable time. *Id.* at § 214.001(d). If the owner fails to comply, the municipality then gives notice (by personal delivery or mail) to each identified mortgagee and lienholder identifying the property and violation and stating that the municipality will demolish the building if it is not done within a reasonable time. *Id.* In other words, subsection (d) gives the owner a chance to act, and *then* gives the mortgagees or lienholders a chance to act, before the municipality takes final action.

Subsection (e), on which Stewart Title relies, is an alternative to the procedure outlined in subsection (d). It provides that the municipality may give mortgagees and lienholders notice *before* the public hearing so they have an opportunity to comment at the hearing. *Id.* at 214.001(e). In this context, "the municipality *may* file notice of the hearing in the Official Public Records of Real Property in the county in which the property is located." *Id.* (emphasis added). Such a notice, if filed, "is binding on subsequent grantees, lienholders, or other transferees of an interest in the property who acquire such interest after the filing of notice, and constitutes notice of the hearing on any subsequent recipient of any interest in the property who acquires such interest after the filing of the notice." *Id.* If the municipality follows this alternative procedure, it need not give mortgagees or lienholders notice by personal delivery or mail if the owner fails to act. *Id.*

Subsections (d) and (e) set out procedures by which a municipality may require or effect the demolition of a substandard building. If a municipality chooses to proceed under subsection (e) and files a notice of hearing to bind subsequent interest owners, such notice must be filed "in the Official Public Records of Real Property in the county in which the property is located." *See id.* at § 214.001(e). But filing the notice in the appropriate records affects only whether the municipality's actions are legal and enforceable against subsequent interest owners. Complying or failing to comply with section 214.001(e) does not establish whether any particular notice complies with the *Policy*. Stewart Title is again reading into the Policy requirements that simply do not appear in its text.

## B. The Policy language is considerably broader than the statutory language.

"Public Records," as used in the Policy, is considerably broader than "the Official Public Records of Real Property in the county in which the property is located," as used in section 214.001(e). Indeed, the Policy definition encompasses the public notice records of Bexar County, where the notice of hearing in this case was filed. This is because the Policy does not require filing in the *official real property records*; it requires filing in records "*relating to real property.*" *Tab A* at 3, ¶ (1)(k) (emphasis added). A notice of hearing on the proposed demolition of improvements certainly "relat[es] to real property." And the court of appeals in the *D'Hanis* opinion states that such notices "are routinely recorded" in the public notice records, as opposed to the real property records. *See D'Hanis*, 2010 WL 3249956, at *3 n.2. Thus, the records where the January Notice was filed fall within the Policy definition of "Public Records." Section 214.001(e) is inapposite.

## C. Neither *Sanchez* nor *Noble Mortgage* adds to the analysis.

Stewart Title next looks to the common law to support its argument that only documents filed in real property records impart constructive notice. It first relies on *Sanchez v. Telles*, 960

11

S.W.2d 762 (Tex. App.—El Paso 1997, pet. denied). But that case simply states that "an instrument relating to real property must be recorded in the *public records* in the county in which a part of the property is located." *Id.* at 767 (emphasis added); *see* TEX. PROP. CODE ANN. § 11.001 (requiring instrument relating to real property to be recorded in county where property is without specifying "real property records"). Both the January Notice and the February Notice were filed in the public records of Bexar County, where the property is located; both comport with *Sanchez*. But Stewart Title then relies on *Noble Mortg. & Investments, LLC v. D&M Vision Investments, LLC*, 340 S.W.3d 65 (Tex. App.—Houston [1st Dist.] 2011, no pet.), to add language to (and to change the meaning of) the *Sanchez* court's statement.

The issue in *Noble Mortgage* was "whether recording a sale on an execution docket in compliance with Rule 656 of the Texas Rules of Civil Procedure is a 'recording' for the purpose of putting subsequent creditors and purchasers on constructive notice under sections 13.001 and 13.002 of the Texas Property Code." *Id.* at 77. Stewart Title states that the *Noble Mortgage* court "interpreted the reference in *Sanchez* to 'public records' as actually referring *"to the county real property records rather than other public records."* *Stewart Title Second MSJ* at 12 (emphasis supplied by Stewart Title). Despite the bold and italics, however, this is not what the *Noble Mortgage* court said. Rather, it interpreted "public records" to mean real property records "rather than the execution docket of the county court." *Noble Mortg.*, 340 S.W.3d at 80. This interpretation does not foreclose constructive notice being imparted by filing notice in some public record other than the execution docket. *See* TEX. PROP. CODE ANN. § 11.001 (specifying county but not type of record). *Noble Mortgage*, like section 214.001, simply does not apply to this case.

Stewart Title has not conclusively established that the January Notice did not trigger

12

coverage because the Policy requires that notice be filed in the Official Records of Real Property. Its request for summary judgment on this ground should be denied.

### III. The Bank's loss is not excluded under the Policy.

In addition to asserting that the Bank's loss is not covered, Stewart Title also asserts that it is excluded under policy Exclusion 3(d). That exclusion excludes from coverage loss arising by reason of "[d]efects, liens, encumbrances, adverse claims or other matters: . . . attaching or created subsequent to Date of Policy . . . ." *Tab A* at 2, ¶ 3(d). Stewart Title asserts that the Bank's loss is excluded because the notice and hearing that actually resulted in the demolition of the apartments occurred after the Date of Policy (September 8, 2009). This analysis misidentifies the cause of the Bank's loss.

The defect, adverse claim, or other matter that resulted in the Bank's loss was not a particular notice or hearing. It was the violation and enforcement of municipal ordinances concerning substandard buildings. Despite Stewart Title's propensity to read portions of the Policy (and statutes and cases) in isolation, the Policy provisions must be read in context.

Covered Risks 5 and 6 provide coverage for losses sustained by reason of the violation or enforcement of laws, ordinances, or governmental regulations such as are at issue here—the Bank's loss was sustained because the improvements on the property had constituted a public nuisance and the City exercised its enforcement powers to ensure that they were demolished. Both the violation and enforcement were matters that existed prior to the September 8, 2009 Date of Policy, as evidenced by the fact that the City issued a demolition order on January 14, 2008, finding that the apartments constituted a public nuisance and ordering their demolition. *See D'Hanis*, 2010 WL 3249956, at *1; *see also Stewart Title Second MSJ* at 2 ("The City of San Antonio had been trying to demolish the apartments on the Property as far back as 2002, due to its [sic] decrepit state").

13

The Bank obtained a temporary injunction setting aside the January Notice and temporarily halting the City's enforcement efforts. That action, however, did not prevent the City from issuing additional notices and continuing the enforcement action that had already been taken. It also did not change the fact that, with the City's refusal to issue building permits, a violation of a municipal nuisance ordinance continued to exist. *See* San Antonio City Code Chapter 6, Art. VIII, §§ 6-156, 6-157. The fact that the City continued its enforcement efforts after the Date of Policy and that demolition was actually effected after that date does not alter when the *substance* of the covered risk began. In other words, the defect, adverse claim, or other matter resulting in the Bank's loss (*i.e.*, matters falling within Covered Risks 5 and 6) was not something "attaching or created subsequent to the Date of Policy." *See Tab A* at 2, ¶ 3(d).

Stewart Title has not conclusively established that the Bank's loss is excluded under Exclusion 3(d). Its request for summary judgment on this ground should be denied.

IV.  **The Bank's loss is covered under Policy provisions other than Covered Risk 2, which is the only type of risk addressed in the cases on which Stewart Title relies.**

Stewart Title next argues that the Bank's loss is not covered under the Policy because demolition of the apartments affected only the value of the insured property, not title to that property. It relies for this argument on *Hanson Business Park, L.P. v. First National Title Insurance Co.*, 209 S.W.3d 867 (Tex. App.—Dallas 2006, pet. denied), and *McGonagle v. Stewart Title Insurance Co.*, 432 S.W.3d 535 (Tex. App.—Dallas 2014, pet. filed). The problem at issue in *Hanson* was that the insured property was in a designated flood plain; the problem in *McGonagle* was that a structure on the property was subject to a dedication instrument. *See Hanson*, 209 S.W.3d at 868; *McGonagle*, 432 S.W.3d at 538-39. Neither case addresses the circumstances or covered risks here at issue; both cases are distinguishable from the present case.

The *Hanson* and *McGonagle* courts both addressed whether the problem at issue was a

14

"defect in or lien or encumbrance on the title" so as to be covered under the title insurance policy. *See Hanson*, 209 S.W.3d at 869; *McGonagle*, 432 S.W.3d at 539. This same language is found in the Policy here at issue, as Covered Risk 2: "Any defect in or encumbrance on the Title." *Tab A* at 1, ¶ (2).

The *Hanson* and *McGonagle* courts both held that the identified problems did not fall within this covered risk. *See Hanson*, 209 S.W.3d at 870; *McGonagle*, 432 S.W.3d at 540. More particularly, the *Hanson* court held that "a defect in, or encumbrance on, title (such as would trigger coverage under a title insurance policy) must involve a flaw in the ownership rights in the property." *Hanson*, 209 S.W.3d at 870. It "refuse[d] to equate a defect in the condition of the property with a defect in title to the property." *Id.* The *McGonagle* court followed suit. *See McGonagle*, 432 S.W.3d at 539-40.

But *Hanson* and *McGonagle* do not govern the analysis in this case. First, the Bank is not claiming loss from "a defect in the condition of the property." *See Hanson*, 209 S.W.3d at 870. The Bank was aware that the property required renovation; that was one purpose of the loan. It is not the *condition of the property* that caused the loss, it is *the demolition order* issued under a municipal ordinance *and the enforcement of that order* by demolition that caused the loss. That is a risk that is expressly covered under the Policy as Covered Risks 5 and 6. No provision analogous to Covered Risks 5 and 6 were at issue, or even mentioned, in either *Hanson* or *McGonagle*.

As noted, the Policy states that it covers "loss or damage . . . sustained or incurred by the Insured by reason of: . . . [a]ny defect in or lien or encumbrance on the Title." *Tab A* at 1, ¶ 2(a). But that is not the *only* covered risk. Rather, the Policy lists 13 other expressly covered risks. *See id.* at 1-2, ¶¶ 1, 3-14. And among those other risks are Covered Risks 5 and 6 which,

15

as established above, apply to the circumstances of this case.[5]

*Hanson* and *McGonagle* held only that the risks asserted in those cases did not fall within the specific coverage provision at issue, which covered only defects in, or liens or encumbrances on *title* (*i.e.*, the equivalent of Covered Risk 2 in the Policy). The coverage provision at issue in those cases was not the same as the coverage provisions at issue in this case (Covered Risks 5 and 6). *Hanson* and *McGonagle* do not support Stewart Title's claim to summary judgment.

**V.      The Bank is not estopped by its position in prior litigation with the City.**

"Judicial estoppel precludes a party who successfully maintains a position in one proceeding from afterwards adopting a clearly inconsistent position in another proceeding to obtain an unfair advantage."[6] *Ferguson v. Bldg. Materials Corp.*, 295 S.W.3d 642, 643 (Tex. 2009).

Stewart Title asserts that the Bank is judicially estopped, but it is not clear from its motion just what it is supposedly estopped from asserting. The motion states that the Bank asserted in prior litigation against the City that the notice of hearing on the demolition order was never filed in the Official Public Records of Real Property of Bexar County. *Stewart Title Second MSJ* at 16. After reciting case law concerning judicial estoppel, Stewart Title concludes that "[t]he Bank cannot now take the position that notice of hearing on the demolition was never filed in the Official Records of Real Property For Bexar County." *Id.* at 17. The two recited positions are not inconsistent; by definition, judicial estoppel cannot apply to them. *See Ferguson*, 295 S.W.3d at 643 (precluding clearly inconsistent positions).

---

[5] Because the Bank does not seek coverage under Covered Risk 2 ("[a]ny defect in or lien or encumbrance on the Title"), Stewart Title's assertion that expert Rhonda Jolley agrees that the January Notice and February Notice do not create a cloud on title is of no consequence. *See Stewart Title Second MSJ* at 16.

[6] Stewart Title appears to also invoke something it calls "estoppel in law." *See Stewart Title MSJ* at 14. The case it cites, *Long v. Knox*, 291 S.W.2d 292 (Tex. 1956), makes no mention of "estoppel in law" and the Bank has not found any Texas case employing that phrase. Because *Long* actually discusses judicial estoppel, the Bank concludes that Stewart Title's reference to "estoppel in law" is simply a reference to judicial estoppel under another name.

16

Assuming Stewart Title means that the Bank cannot take the position that the January Notice triggered coverage under the Policy because the Bank asserted in prior litigation that that notice did not impart constructive notice, its argument lacks merit. Once again, Stewart Title attempts to import section 214.001, a statute governing action by a municipality, into this contract dispute between private parties. Compliance with section 214.001 was properly at issue in the prior litigation *against the City*. There is no such issue in this litigation against Stewart Title, a nongovernmental entity.

The issue in the prior litigation was whether the Bank properly obtained a temporary injunction enjoining the enforcement of the 2008 demolition order. *See D'Hanis*, 2010 WL 3249956, at *1. The Bank argued that the demolition order was not enforceable against it because it had neither actual nor constructive notice of the hearing and was a bona fide lender. *Id.* at *2. The City argued that the Bank was not protected as a bona fide lender because notice of the hearing was filed with the Bexar County Clerk. *Id.* at *3. The court of appeals held that notice of hearing on a demolition order is binding on subsequent lienholders "only if the municipality files the notice of hearing in the Official Public Records of Real Property." *Id.* (citing TEX. LOCAL GOV'T CODE § 214.001(e)).

The issue and holding in *D'Hanis* specifically concerned the City's failure to comply with statutory requirements for binding subsequent lienholders. *See id.* It was in that specific context that the Bank asserted that it did not have constructive notice because the notice was not filed in the real property records. Had the January Notice been filed in those records, constructive notice would have been imposed by statute. *See* TEX. LOCAL GOV'T CODE § 214.001(e). But, for all the reasons discussed in section II(A) above, whether the January Notice does or does not fulfill the City's statutory obligations does not determine whether that same

17

notice complies with the Policy so as to trigger coverage. Thus, the fact that the January Notice did not provide constructive notice binding the Bank under section 214.001(e) does not preclude a finding that the same notice satisfied the notice filing requirement of Covered Risks 5 and 6. The Bank's position on the statutory issue is therefore not "clearly inconsistent" with its position on the Policy issue.

In addition, the only notice at issue in the prior litigation was the January Notice. No mention was made of, and no position was asserted on, the February Notice. Stewart Title has therefore not established that the Bank is judicially estopped from asserting that coverage was triggered by the February Notice.

Stewart Title has not conclusively established that the Bank is judicially estopped from asserting that the January Notice and the February Notice complied with the requirements of Covered Risks 5 and 6. Its request for summary judgment on that ground should be denied.

## RESPONSE TO NO-EVIDENCE SUMMARY JUDGMENT MOTION

### STANDARD FOR NO-EVIDENCE SUMMARY JUDGMENT.

After an adequate time for discovery has passed, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which the adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). But summary judgment is not appropriate if the non-movant presents evidence showing that it is entitled to a trial. *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *Llanes v. Corpus Christi Indep. Sch. Dist.*, 64 S.W.3d 638, 641 (Tex. App.—Corpus Christi 2001, pet. denied). In other words, if the evidence demonstrates a genuine issue of material fact, summary judgment should be denied. *See* TEX. R. CIV. P. 166a(i).

18

## ARGUMENT AND AUTHORITIES

**I.    Stewart Title's second motion for no-evidence summary judgment is fatally flawed.**

Rule 166a(i) of the Texas Rules of Civil Procedure authorizes a party to move for summary judgment on the ground that "there is no evidence of one or more essential elements of a claim or defense on which the adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). It does not, however, authorize "conclusory motions and general no evidence challenges." *Callaghan Ranch, Ltd. v. Killam*, 53 S.W.3d 1, 3 (Tex. App.—San Antonio 2000, pet. denied) (citing TEX. R. CIV. P. 166a(i) & cmt.). Rather, the motion must state the specific elements as to which there is no evidence. *Id.* "If a no-evidence motion for summary judgment is not specific in challenging a particular element or is conclusory, the motion is legally insufficient as a matter of law . . . ." *Callaghan Ranch*, 53 S.W.3d at 3.

The motion at issue in *Callaghan Ranch* stated:

> The Killams are entitled to summary judgment because the Plaintiffs cannot by pleading, deposition, answers to interrogatories or other admissible evidence demonstrate there is any evidence to support the declaratory judgment seeking to declare the road in question a public thoroughfare.

*Id.* It then generally challenged Callaghan Ranch's factual allegations. *Id.* The court of appeals concluded, "The motion fails to state the elements of Callaghan Ranch's causes of action as to which there is no evidence; therefore, it is legally insufficient as a matter of law." *Id.* Stewart Title's motion suffers the same defect.

Stewart Title's second purported no-evidence motion states that it is moving for summary judgment on "all Plaintiffs' claims," but does not identify what those claims are. *Stewart Title MSJ* at p. 15. It broadly states that "Plaintiffs cannot . . . demonstrate that there is any genuine issue of material fact to support their claims," again without identifying those claims. *Id.* As an attempt at specificity, the motion states, "Plaintiffs can produce no evidence to support their

19

claim of breach of contract." It then briefly repeats arguments made in the traditional portion of the motion. *See id.* But Stewart Title does not identify the essential elements of the Bank's breach of contract claim and does not state the specific element(s) for which there is no evidence. Its second no-evidence motion (like its identical first no-evidence motion) is therefore deficient. *See id.*

Stewart Title's second purported no-evidence motion is again nothing more than an abbreviated version of its traditional motion. Because it is "not specific in challenging a particular element [and] is conclusory, the motion is legally insufficient as a matter of law" and should be denied. *See Callaghan Ranch*, 53 S.W.3d at 3.

## II.    In the alternative, the evidence raises a genuine issue of material fact.

The only element of the Bank's claim for breach of contract even arguably challenged in Stewart Title's second no-evidence motion is whether Stewart Title committed a breach of its obligations under the Policy. Stewart Title argues that there can be no breach because there is no coverage because no notice of hearing was filed in the real property records and such filing is a predicate to coverage. *Stewart Title MSJ* at 15.

The Bank has produced evidence demonstrating that Stewart Title breached the Policy by refusing to pay a covered claim. The Policy covers losses resulting from the violation or enforcement of a municipal ordinance "if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce . . . ." *Tab A* at 2, ¶¶ (5), (6). The Bank's loss results from the violation of a municipal nuisance ordinance and the City's enforcement of that ordinance. *Tab D.* A notice describing the Land was recorded in the Public Records setting forth the violation or intention to enforce. *Tabs B, C.* A lawsuit over the demolition of the improvements to the property was pending at the time the policy was issued. *Tab G.* The Bank made a claim on the Policy, and Stewart Title denied the claim. *Tab F.*

20

The Bank has produced evidence raising a genuine issue of material fact and demonstrating its entitlement to trial on the issue of Stewart Title's breach of contract. Stewart Title's motion for no-evidence summary judgment should be denied.

## OBJECTIONS TO STEWART TITLE'S
## PROFFERED SUMMARY JUDGMENT EVIDENCE

The Bank objects to Exhibit 2, which is purportedly an article from mysa.com, because it is irrelevant to any summary judgment grounds and is hearsay. *See* TEX. R. EVID. 402, 802.

The Bank objects to Exhibit 17, which is Stewart Title's Notice of Intent to Use Discovery Products Not on File with the Court for Summary Judgment Purposes (the "Notice"). The movant must file and serve all evidence at least twenty-one days before the hearing. TEX. R. CIV. P. 166a(d). The Notice references "deemed Responses to Requests for Admission, Non-Responses to Requests for Production, Requests for Disclosure, Interrogatory answers, appendices, references and other discovery," but Stewart Title has failed to attached any such items to its summary judgment motion or otherwise file and serve any such items at least twenty-one days before the hearing. Accordingly, the Notice provides insufficient notice of any intent to use the foregoing items. To the extent Stewart Title attempts to use any "evidence" that it failed to file and serve at least twenty-one days before the hearing, the Bank objects to such evidence on the grounds that it is offered in violation of TEX. R. CIV. P. 166a(d).

Accordingly, Stewart's Exhibits 2 and 17 should be stricken from the summary judgment record.

## CONCLUSION AND PRAYER

Stewart Title does not conclusively prove its entitlement to summary judgment on any of the grounds asserted in its motion for traditional summary judgment. Its motion for no-evidence

summary judgment is fatally defective. In addition, the no-evidence motion fails because the Bank has not only produced evidence supporting its claim of coverage, but has conclusively established coverage under the Policy.

WHEREFORE, Vantage Bank Texas, successor by merger to D'Hanis State Bank, individually and as agent for Banprop, L.L.C., respectfully requests that the Court deny Stewart Title Guaranty Company's motion for summary judgment in its entirety. The Bank also requests such further relief to which it is entitled.

Respectfully submitted,

COX SMITH MATTHEWS INCORPORATED
David B. West
State Bar No. 21196400
dbwest@coxsmith.com
Ellen B. Mitchell
State Bar No. 14208875
emitchell@coxsmith.com
David A. Vanderhider
State Bar No. 24070787
dvanderhider@coxsmith.com
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395

/s/ David B. West
David B. West

*Attorneys for Vantage Bank Texas, successor by merger to D'Hanis State Bank, Individually and as Agent for Banprop, L.L.C.*

22

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiffs' Response to Defendant's Second Motion for Summary Judgment has been served on counsel of record via e-mail and facsimile on this 30th day of December, 2014, as follows:

Scott Breitenwischer
Andrew Nash
Royston, Rayzor, Vickery & Williams, L.L.P.
Pennzoil Place
711 Louisiana Street, Suite 500
Houston, Texas 77002-8380
(713) 224-8380 – Telephone
(713) 225-9945 – Facsimile

/s/ David B. West
David B. West

# Appendix J

FILED
2/4/2015 4:27:25 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Lisa Morales

Cause No. 2013-CI-14899

| | | |
|---|---|---|
| VANTAGE BANK TEXAS, SUCCESSOR BY MERGER TO D'HANIS STATE BANK, and BANPROP, L. L. C., | § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | |
| v. | § § | 150th JUDICIAL DISTRICT |
| STEWART TITLE GUARANTY COMPANY, | § § § § | |
| Defendants. | § | BEXAR COUNTY, TEXAS |

## PLAINTIFFS' THIRD AMENDED ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

PLAINTIFFS, VANTAGE BANK TEXAS, successor by merger to D'HANIS STATE BANK ("Bank"), and BANPROP, L. L. C, file this Third Amended Original Petition against STEWART TITLE GUARANTY COMPANY ("Stewart Title"), and in support thereof would show the court as follows:

### I.     DISCOVERY CONTROL PLAN

1.     Plaintiffs intend that discovery be conducted under Level 3, pursuant to rule 190.4 of the Texas Rules of Civil Procedure.

### II.     PARTIES

2.     Plaintiff Vantage Bank Texas, successor by merger to D'Hanis State Bank, is a financial institution created under the laws of the State of Texas, with its principal place of business in San Antonio, Texas.  Pursuant to Chapter 10.008(a)(2) of the Texas Business Organizations Code, Vantage Bank Texas is vested with all rights, title and interests to the property owned by D'Hanis State Bank, including all rights, interests and claims in this law suit.

5730297.3

3. Plaintiff Banprop, L. L. C. is a limited liability corporation incorporated under the laws of the State of Texas, with its principal place of business in McAllen, Texas.

4. Defendant Stewart Title Guaranty Company is a corporation licensed to do business in Texas. It has entered an appearance in this case.

## III. JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over this suit. The damages sought are within the jurisdictional limits of this Court.

6. The Court has personal jurisdiction over the defendant because it resides or does business in the State of Texas and this lawsuit arises out of acts, omissions or business it conducted in the State of Texas.

7. Venue is proper pursuant to section 15.002 of the Texas Civil Practice and Remedies Code because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in Bexar County, Texas.

## IV. FACTUAL BACKGROUND

**A. The Bank makes a loan and obtains a title policy from Stewart Title.**

8. This is a suit on a title policy. In September 2009, Stewart Title issued a mortgagee title policy, policy number M-5952-000007292 (the "Policy"), to the Bank in the amount of $900,000. The subject property is located at 119 Jackson Keller Road and is described in the Policy as Lot 7, Block, 13, New City Block 10060, East Shearer Hills Addition, situated in the City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 4500, Page 229, Deed and Plat Records of Bexar County, Texas (the "Property").

9. Prior to issuing the Policy, Stewart Title obtained a title run from one of its agents, Service Title. That title run was made from a title plant leased from Title Plant Services

2

5730297.3

Division of Property Information Corporation. On information and belief, Property Information Corporation is a wholly-owned subsidiary of Stewart Title.

10. The Policy obligates Stewart Title to indemnify the Bank against loss or damage sustained by reason of a variety of covered risks, including:

> (5) The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting or relating to:
>
> . . . .
>
> (b) the character, dimensions or location of any improvement erected on the Land;
>
> . . . .
>
> if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
>
> (6) An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.

11. The Policy defines "Public Records" as "records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge."

12. The Policy defines "Land" as including "affixed improvements that by law constitute real property." "Land," in this case, thus includes improvements that existed on the Property when the Policy was issued.

13. Relying on the protection supplied by the Policy, the Bank made a $900,000 loan to SA Eden Roc Apartments, L.L.C. ("Eden Roc") to enable Eden Roc to purchase the Property and to renovate a number of apartment buildings ("Improvements") located on the Property.

3

5730297.3

14.     In addition, before making the loan, the Bank obtained an appraisal of the Property, an engineering report, and verification that the City of San Antonio (the "City") would issue building permits for the renovation of the Improvements. The Bank also obtained a title commitment from Service Title, Stewart Title's agent. The title commitment did not contain Schedule C, which would have alerted the borrower or the Bank to the City's efforts to have the Improvements demolished.[1]

**B.     The City pursues efforts to demolish Improvements on the subject Property.**

15.     Unknown to the Bank, the City had been taking steps to have the Improvements demolished. These efforts, which began in 2001, led to a protracted dispute with the seller of the Property, Raul Cantu Family Limited Partnership No. 2 ("Cantu"). Much of the relevant information was available in a title search made by Service Title, acting as agent for Stewart Title. In addition, documents such as the following examples were included not only in Service Title's files, but in Stewart Title's own files:

| | |
|---|---|
| 02/06/01 | A notice of hearing to Cantu regarding the possible demolition of the Improvements. |
| 12/29/04 | Notice of the City's first lawsuit against Cantu, Cause No. 2002-CI-09703, seeking restoration and/or demolition of the Property. |
| 02/11/08 | A notice stating the Improvements on the Property were the subject of a hearing on possible demolition ("February Notice"). |

16.     Other notices pertaining to the possible demolition of the Improvements to the Property were filed in the Official Public Records of Bexar County, including:

---

[1] The title commitment did not include any reference to notices of hearings on the possible demolition of the Improvements, the issuance of a demolition order, or the fact that a lawsuit was pending between the property owner and the City over the issuance of a demolition order. All of this information was available in the Official Public Records of Bexar County.

4

5730297.3

| 01/14/08 | A notice stating the Improvements on the Property were the subject of a hearing on possible demolition ("January Notice"). |
| 02/13/08 | A lawsuit between Cantu and the City appealing the demolition order, Cause No. 2008 CI-02297, Bexar County, Texas. That case was pending and set for trial before the Policy was issued. |

17. At the time the Policy was issued, the City had issued an order to demolish the Improvements to the Property which were the subject of the Bank's loan. Cantu's lawsuit against the City concerning that demolition order was also pending at the time the Policy was issued. Before judicial review of the demolition order was completed, however, the Property was sold to Eden Roc.[2]

18. In January of 2008, the City of San Antonio issued notice of a hearing concerning the proposed demolition of the Improvements on the Property ("January Notice"). The January Notice was filed and recorded in the Official Public Records of Bexar County, Texas. In February of 2008, the City issued a second notice of a hearing to demolish the Improvements ("February Notice"). The February Notice was filed in the Real Property Records of Bexar County with the correct legal description, but the wrong owner's name. This information was in the title search made by Service Title, but was not noted on Schedule C of the title commitment issued to the Bank.

19. Although the Dangerous Structure Determination Board had found the property to be a public nuisance and issued a demolition order, a different office of the City had issued building permits for the rehabilitation of the Property. Relying on the issuance of those permits, the Bank closed on the loan and advanced $380,212.60 for the purchase of the Property,

---

[2] The judicial review proceeding was later dismissed because the Property was sold. *See City of San Antonio v. D'Hanis State Bank*, No. 04-10-00181-CV, 2010 WL 3249956, *1 (Tex. App.—San Antonio Aug. 18, 2010, no pet.).

5

including the Improvements. The Bank then advanced approximately $136,632.69 for rehabilitating the Improvements, for a total of $516,845.29. At a later inspection, a Bank officer found a "Stop Work Notice" posted on the Property. Then, in November 2009, the Bank learned that the building permits had been revoked and the Property was the subject of a demolition order resulting from the January Notice.

**C.    Stewart Title uses litigation against City as basis to deny coverage.**

20.    The Bank notified Stewart Title of the City's enforcement action. As obligated under the Policy, Stewart Title assumed coverage under the Policy and retained Richard Butler to represent the Bank and file a law suit against the City.

21.    Susan Withers, claims counsel for Stewart Title, was involved in the strategy for the law suit. She solicited affidavits for use in pleadings and became involved in the strategy for the law suit. On January 28, 2010, Withers acknowledged in an e-mail to Butler that "a Notice of Hearing (for a hearing on January 14, 2008) was filed of record, and not excepted on our policy."

22.    On February 1, 2010, Withers was informed by Service Title that the January Notice "was filed in the Public Notices Records NOT in the Official Public Records or property records." Upon receiving this information, Withers responded, "Please DO NOT LET THEM CHANGE THIS. IT NEEDS TO STAY AS IS."

23.    Withers then forwarded her instruction ("DO NOT LET THEM CHANGE THIS") to Butler and marked the e-mail "high" importance. Butler responded that Stewart Title had received two notices of hearing concerning the Property: (1) the January Notice, which was filed in the Official Public Records of Bexar County, and (2) the February Notice, which was

6

filed in the Official Public Records *of Real Property* of Bexar County. The February Notice was in Stewart Title's file.

24. Withers then contacted Nancy Staton, an employee of PropertyInfo Corp. (a wholly-owned subsidiary of Stewart Title) and requested an affidavit on how the January Notice was recorded and indexed. Staton testified that: (1) the January Notice was not in PropertyInfo Corp.'s database, and (2) if the January Notice had been filed in the Official Public Records of Real Property of Bexar County, it would be in PropertyInfo Corp.'s database.

25. On February 4, 2010, Butler filed suit against the City (*D'Hanis State Bank v. City of San Antonio*, Cause No. 2010-CI-01778, in the 73rd Judicial District Court of Bexar County, Texas) seeking to enjoin demolition of the Improvements and a declaration that the Bank was not bound by the January Notice because it was an innocent lender without actual or constructive notice.

26. The trial court denied the City's plea to the jurisdiction and granted a temporary injunction enjoining demolition of the Improvements. The City filed an interlocutory appeal challenging both rulings.

**D. Stewart Title abandons the Bank.**

27. Butler recognized, and informed the Bank, that setting aside one notice of demolition would not prevent the City from issuing future notices and ultimately demolishing the Improvements. Despite the City's appeal, and the likelihood that the City would continue its enforcement efforts regardless of the outcome of that appeal, Stewart Title declared that it had fulfilled its responsibility under the Policy.

28. Withers informed the Bank that Stewart Title's basis for withdrawing coverage was that "any claim concerning this proposed demolition of the structures located on the

7

[P]roperty falls outside of the scope of coverage provided by the Policy" because "there was no notice filed for record in the Official Public Records of Real Property of Bexar County Texas." Thus, although it had actual knowledge of the February Notice, Stewart Title took the position that it had no obligation to provide coverage because the January Notice was filed in official records, but not the official real property records. As a result, the Bank was forced to retain counsel on its own to defend the City's appeal.

29. Withers provided Butler with a copy of her letter to the Bank denying coverage. Butler responded by pointing out the potential damage to the Bank resulting from the litigation strategy directed by Stewart Title:

> I am afraid the bank's attorneys are going to contend that by seeking relief from the City's demolition order on the basis that the 'Notice of Hearing' was not properly recorded, my defense cost them their coverage.

Withers replied:

> That is the defense all the way around. If it had been there, we would have taken exception and they wouldn't have made the loan. If you did not raise the defense, they would lose and we would still deny.

30. But Withers' reply is disingenuous. She indicates that Stewart Title would have excepted demolition of the Improvements from coverage if a notice of demolition hearing had been filed in the real property records, presumably because Stewart Title would have been aware of the notice. But a notice of demolition hearing *was* filed in the real property records—the February Notice—and Stewart Title had both actual and constructive knowledge of that notice. Even so, it did not except demolition of the Improvements from coverage.

31. Withers' reply also acknowledges the importance to the Bank of Stewart Title's failure to take an exception by noting that the Bank would not have made the loan if an exception had been taken.

8

32.    Finally, Withers asserts that Stewart Title would have denied coverage if the Bank had lost its suit against the City. In essence, Withers asserts that Stewart Title would have acted in bad faith and breached its contract with the Bank regardless of the outcome of the lawsuit against the City. If the City had prevailed, demolition of the Improvements would simply have occurred earlier than it did. But coverage under the Policy had already been established by the February Notice, which met all of the criteria of covered risks 5 and 6.

33.    Stewart Title had no valid grounds for denying coverage even if the City prevailed in the prior lawsuit. For that reason, pursuing a litigation strategy based on the January Notice being insufficient to provide constructive notice because it was not filed in the real property records jeopardized the Bank's coverage. It appears, though, that this was precisely Stewart Title's intent. Having realized that it did not except demolition of the Improvements from coverage, its only option to avoid paying the Bank's claim was to attempt to remove the claim from the scope of covered risks 5 and 6. Pursuing the strategy of arguing that the January Notice did not provide constructive notice was an integral part of that plan.

34.    Despite Stewart Title's efforts to paint the Bank into a "no constructive notice" corner, the holding of the court of appeals in the lawsuit against the City does not implicate Stewart Title's obligations under the Policy. The court of appeals narrowly (and properly) focused on the requirements for constructive notice as set out in section 214.001(e) of the Local Government Code. It did not address the different, and independent, requirements for constructive notice as set out in the Policy: a notice, describing any part of the land and setting forth the violation or intention to enforce, filed in the Public Records. The court of appeals also did not address (because it was not at issue) the constructive notice effect of the February Notice.

9

**E. The Bank suffers loss as a result of Stewart Title's acts and omissions.**

35. The court of appeals ultimately held that the Bank was not bound by the January Notice. *City of San Antonio v. D'Hanis State Bank*, No. 04-10-00181-CV, 2010 WL 3249956 (Tex. App.—San Antonio Aug. 18, 2010, no pet.). But during the pendency of the appeal, the Improvements could not be renovated because the City would not issue building permits. The Property therefore stood vacant. Eden Roc defaulted on the loan, forcing the Bank to foreclose on, and take ownership of, the Property. This resulted in the Bank (through Banprop, an affiliate of the Bank which held its real property, including troubled assets) incurring costs to fence off and maintain the Property, and to pay taxes, insurance, and legal fees.

36. In addition, undaunted by its initial failed attempt to demolish the Improvements, the City renewed its enforcement and demolition efforts. It issued a new demolition order and required the Bank (through Banprop) to pay the cost of demolition, including the considerable cost to remove asbestos from the Improvements before they could be demolished

37. The Bank has incurred significant losses resulting from the City's enforcement actions, which culminated in the demolition of the Improvements. Stewart Title has failed and refused to indemnify the Bank for those losses. Further, the legal course of action directed by Withers and Stewart Title resulted in additional loss to the Bank.

## V. CAUSES OF ACTION

**A. Breach of contract.**

38. As demonstrated above, the Policy requires Stewart Title to indemnify the Bank against loss or damage sustained by reason of certain governmental enforcement actions if notice, describing any part of the subject property and setting forth the violation or intention to enforce, was filed in the Public Records.

10

39. The January Notice contains a legal description of the Property, sets forth the alleged violation and the City's intention to enforce, and was filed in the Official Public Records of Bexar County, Texas.

40. The February Notice contains a legal description of the Property, sets forth the alleged violation and the City's intention to enforce, and was filed in the Official Public Records of Real Property of Bexar County, Texas.

41. Plaintiffs sustained losses as a result of the City's enforcement actions including, but not limited to, loss of the value of the Improvements, and costs incurred to maintain the Property, remove asbestos and mold prior to demolition, demolish the Improvements, and obtain legal representation after Stewart Title's denial of coverage.

42. Plaintiffs' losses fall within covered risks 5 and 6 of the Policy. Stewart Title's refusal to indemnify for those losses constitutes a breach of contract, for which Plaintiffs seek recovery of their direct and indirect actual damages.

43. Also as a result of Stewart Title's breach of contract, Plaintiffs have been required to incur attorney's fees to prosecute the present action. Plaintiffs therefore seek an award of attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code.

**B.    Breach of the duty of good faith and fair dealing.**

44. Issuing the Policy imposed on Stewart Title a common law duty of good faith and fair dealing. Stewart Title breached this duty of good faith and fair dealing by denying payment when its liability under the Policy was reasonably clear.

45. Stewart Title's breach of the duty of good faith and fair dealing proximately caused injury to Plaintiffs, for which Plaintiffs seek recovery of direct and indirect actual damages.

11

## C. Violations of chapter 541 of the Texas Insurance Code.

46. Stewart Title's acts and omissions, as described above, constitute violations of chapter 541 of the Texas Insurance Code. Specifically, Stewart Title violated sections 541.060 and 541.061 of the Texas Insurance Code by:

(1) misrepresenting a material fact or policy provision relating to coverage at issue;

(2) failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim with respect to which Stewart Title's liability has become reasonably clear; and

(3) misrepresenting the Policy by:

(a) making untrue statements of material fact;

(b) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

(c) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

(d) making a material misstatement of law; and

(e) failing to disclose a matter required by law to be disclosed, including a disclosure in accordance with another provision of the Texas Insurance Code.

47. Stewart Title's violations of chapter 541 of the Texas Insurance Code caused Plaintiffs to suffer direct and indirect actual damages, for which Plaintiffs seek recovery.

48. Each of Stewart Title's acts and omissions, as described above, were committed knowingly. Plaintiffs therefore seek an additional award of up to three times their actual damages.

49. As a result of Stewart Title's violations of chapter 541 of the Texas Insurance Code, Plaintiffs have been required to incur attorney's fees to prosecute the present action.

12

5730297.3

Plaintiffs therefore seek an award of attorney's fees under chapter 541 of the Texas Insurance Code.

## VI.    DISCOVERY RULE

50.    Plaintiffs did not discover and, through the exercise of reasonable diligence, could not have discovered, the facts giving rise to its claims for breach of the duty of good faith and fair dealing, violations of chapter 541 of the Texas Insurance Code, and fraud prior to receipt of correspondence from Withers to Butler on October 22, 2014. These claims, being filed within the applicable limitations periods following the discovery date, are therefore timely.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Vantage Bank Texas, successor by merger to D'Hanis State Bank, and Banprop, L.L.C., respectfully request that the Court enter judgment in their favor as follows:

(a)    For Stewart Title Guaranty Company's breach of its contract of indemnity;

(b)    For Stewart Title Guaranty Company's breach of the duty of good faith and fair dealing;

(c)    For Stewart Title Guaranty Company's violations of the Texas Insurance Code;

(d)    For actual damages of at least $959,571.39;

(e)    For three times the amount of actual damages for Stewart Title's knowing conduct;

(f)    For reasonable and necessary attorney's fees incurred in bringing this action and for any appeal by any party to the court of appeals, application for review by the Supreme Court of Texas, or proceedings before the Supreme Court of Texas;

(g)    For pre-judgment interest and post-judgment interest at the highest rate allowed by law; and

(h)    For such other and further relief against the Defendants to which Plaintiffs may be justly entitled.

13

5730297.3

Respectfully submitted,

COX SMITH MATTHEWS INCORPORATED
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
(210) 554-5500 – Telephone
(210) 226-8395 – Facsimile


By: /s/ David B. West
    David B. West
    State Bar No. 21196400
    David A. Vanderhider
    State Bar No. 24070787
    dbwest@coxsmith.com
    dvanderhider@coxsmith.com

*Attorneys for Vantage Bank Texas, successor by merger
to D'Hanis State Bank, and Banprop, L.L.C.*

14

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiffs' Third Amended Original Petition

and Request for Disclosure has been served on counsel of record via facsimile on this 4th day of

February, 2015, as follows:

Scott Breitenwischer
Andrew Nash
Royston, Rayzor, Vickery & Williams, L.L.P.
1600 Smith Street, Suite 5000
Houston, Texas 77002-7380
(713) 224-8380 – Telephone
(713) 225-9945 – Facsimile

/s/ David B. West
David B. West

15

5730297.3

# Appendix K



# CITY OF SAN ANTONIO

P. O. BOX 839966
SAN ANTONIO TEXAS 78283-3966

DATE: October 13, 2011

D'HANIS STATE BANK
1401 19TH ST
HONDO TEXAS 78861

RE:     PROPERTY AT: 119 JACKSON KELLER

## NOTICE OF HEARING

You are hereby notified that the Dangerous Structure Determination Board has rescheduled the above property for another public hearing on <u>October 24, 2011</u> at 8:30 a.m. in the City Council Chambers of the Municipal Plaza Building located at 114 W. Commerce Street.

This date shall supersede any other conflicting hearing dates contained in prior notices or orders from the Board. The Board shall hear all issues and follow procedures noticed in its prior orders regarding the above property. <u>All warnings, reports, or directions contained or incorporated in prior notices or orders remain valid and applicable.</u>

For more information, please contact the Dangerous Premise Unit at (210) 207-3324.

Sincerely yours,

THE MUNICIPAL PLAZA BUILDING IS WHEELCHAIR
ACCESSIBLE. ACCESSIBLE PARKING SPACES ARE
AVAILABLE UPON REQUEST. INTERPRETERS FOR THE
DEAF MUST BE REQUESTED AT LEAST 24 HOURS PRIOR
TO THE MEETING BY CALLING 207-7245-TDD.

MARC A. CASTRO
Assistant Director
Development Services Department
Code Enforcement Services Division

Legal Review on 10.13.11   by _____

Eric G. Burns
Assistant City Attorney

EXHIBIT
15

DHSB-Banprop - 000782